FOGERTY *v.* FANTASY, INC.

No. 92–1750.   Argued December 8, 1993—Decided March 1, 1994

REHNQUIST, C. J., delivered the opinion of the Court, in which BLACK-MUN, STEVENS, O'CONNOR, SCALIA, KENNEDY, SOUTER, and GINSBURG, JJ., joined. THOMAS, J., filed an opinion concurring in the judgment, *post*, p. 535.

*Kenneth I. Sidle* argued the cause for petitioner. With him on the briefs were *Vincent H. Chieffo* and *Julia L. Ross.*

*Lawrence S. Robbins* argued the cause for respondent. With him on the brief were *Carlos T. Angulo, Malcolm Burnstein,* and *Norman G. Rudman.**

*Jonathan A. Marshall, William G. Pecau, Jon R. Stark, Stephen P. Fox,* and *Roland I. Griffin* filed a brief for Hewlett-Packard Co. as *amicus curiae* urging reversal.

*Jack E. Brown, Chris R. Ottenweller,* and *Charles A. Blanchard* filed a brief for Apple Computer, Inc., as *amicus curiae* urging affirmance.

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

The Copyright Act of 1976, 17 U. S. C. § 505, provides in relevant part that in any copyright infringement action "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs."[1] The question presented in this case is what standards should inform a court's decision to award attorney's fees to a prevailing defendant in a copyright infringement action—a question that has produced conflicting views in the Courts of Appeals.

Petitioner John Fogerty is a successful musician, who, in the late 1960's, was the lead singer and songwriter of a popular music group known as "Creedence Clearwater Revival."[2] In 1970, he wrote a song entitled "Run Through the Jungle" and sold the exclusive publishing rights to predecessors-in-interest of respondent Fantasy, Inc., who later obtained the copyright by assignment. The music group disbanded in 1972 and Fogerty subsequently published under another recording label. In 1985, he published and registered a copyright to a song entitled "The Old Man Down the Road," which was released on an album distributed by Warner Brothers Records, Inc. Respondent Fantasy, Inc.,

---

[1] The section provides in full: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U. S. C. § 505.

[2] Creedence Clearwater Revival (CCR), recently inducted into the Rock and Roll Hall of Fame, has been recognized as one of the greatest American rock and roll groups of all time. With Fogerty as its leader, CCR developed a distinctive style of music, dubbed "swamp rock" by the media due to its southern country and blues feel. Brief for Petitioner 4–5; see also Questions and Answers with John Fogerty, Los Angeles Times, Jan. 12, 1993, section F, p. 1, col. 2.

sued Fogerty, Warner Brothers, and affiliated companies[3] in District Court, alleging that "The Old Man Down the Road" was merely "Run Through the Jungle" with new words.[4] The copyright infringement claim went to trial and a jury returned a verdict in favor of Fogerty.

After his successful defense of the action, Fogerty moved for reasonable attorney's fees pursuant to 17 U. S. C. § 505. The District Court denied the motion, finding that Fantasy's infringement suit was not brought frivolously or in bad faith as required by Circuit precedent for an award of attorney's fees to a successful defendant.[5] The Court of Appeals affirmed, 984 F. 2d 1524 (CA9 1993), and declined to abandon the existing Ninth Circuit standard for awarding attorney's fees which treats successful plaintiffs and successful defendants differently. Under that standard, commonly termed the "dual" standard, prevailing plaintiffs are generally awarded attorney's fees as a matter of course, while prevailing defendants must show that the original suit was frivolous

---

[3] Pursuant to an agreement between Fogerty and the Warner defendants, Fogerty indemnified and reimbursed the Warner defendants for their attorney's fees and costs incurred in defending the copyright infringement action. Brief for Petitioner 4, n. 3.

[4] In addition to the copyright infringement claim, Fantasy asserted state law and Lanham Act claims. These claims were voluntarily dismissed before trial. Petitioner also asserted various counterclaims against Fantasy, which were ultimately dismissed on Fantasy's motion for summary judgment. These related claims and counterclaims are not before this Court.

[5] In making its findings, the District Court stated: "Although the facts of this case did not present the textbook scenario of copyright infringement, the Court has held that Fogerty could indeed be held liable for copyright infringement even where he also wrote the song allegedly infringed. . . . Nor does Fantasy's 'knowledge of Fogerty's creativity' mean that this suit was brought in bad faith, where a finding of subconscious copying would have supported Fantasy's infringement claim." App. to Pet. for Cert. A–31 (citation omitted).

or brought in bad faith.[6]  In contrast, some Courts of Appeals follow the so-called "evenhanded" approach in which no distinction is made between prevailing plaintiffs and prevailing defendants.[7]  The Court of Appeals for the Third Circuit, for example, has ruled that "we do not require bad faith, nor do we mandate an allowance of fees as a concomitant of prevailing in every case, but we do favor an evenhanded approach." *Lieb* v. *Topstone Industries, Inc.*, 788 F. 2d 151, 156 (1986).

We granted certiorari, 509 U. S. 903 (1993), to address an important area of federal law and to resolve the conflict between the Ninth Circuit's "dual" standard for awarding attorney's fees under § 505, and the so-called "evenhanded" approach exemplified by the Third Circuit.[8]  We reverse.

---

[6] By predicating an award of attorney's fees to prevailing defendants on a showing of bad faith or frivolousness on the part of plaintiffs, the "dual" standard makes it more difficult for prevailing defendants to secure awards of attorney's fees than prevailing plaintiffs.  The Ninth Circuit has explained that prevailing plaintiffs, on the other hand, should generally receive such awards absent special circumstances such as "the presence of a complex or novel issue of law that the defendant litigates vigorously and in good faith . . . ." *McCulloch* v. *Albert E. Price, Inc.*, 823 F. 2d 316, 323 (1987).  In the instant case, the Court of Appeals explained: "The purpose of [the dual standard] rule is to avoid chilling a copyright holder's incentive to sue on colorable claims, and thereby to give full effect to the broad protection for copyrights intended by the Copyright Act." 984 F. 2d, at 1532.

[7] At oral argument, counsel for respondent voiced his dissatisfaction with the terms "dual" and "evenhanded" used to describe the differing rules in the Circuits.  Tr. of Oral Arg. 31.  Counsel objected to the implication from the terms—that the Ninth Circuit's dual standard was somehow not evenhanded or fair.  While this point may be well taken in a rhetorical sense, we will continue to use the terms as commonly used by the lower courts for the sake of convenience.

[8] In addition to the Ninth Circuit, the Second, Seventh, and District of Columbia Circuits have adopted a "dual" standard of awarding attorney's fees whereby a greater burden is placed upon prevailing defendants than prevailing plaintiffs.  See, *e. g.*, *Diamond* v. *Am-Law Publishing Corp.*,

Respondent advances three arguments in support of the dual standard followed by the Court of Appeals for the Ninth Circuit in this case. First, it contends that the language of § 505, when read in the light of our decisions construing similar fee-shifting language, supports the rule. Second, it asserts that treating prevailing plaintiffs and defendants differently comports with the "objectives" and "equitable considerations" underlying the Copyright Act as a whole. Finally, respondent contends that the legislative history of § 505 indicates that Congress ratified the dual standard which it claims was "uniformly" followed by the lower courts under identical language in the 1909 Copyright Act. We address each of these arguments in turn.

The statutory language—"the court may also award a reasonable attorney's fee to the prevailing party as part of the costs"—gives no hint that successful plaintiffs are to be treated differently from successful defendants. But respondent contends that our decision in *Christiansburg Garment Co.* v. *EEOC,* 434 U. S. 412 (1978), in which we construed virtually identical language, supports a differentiation in treatment between plaintiffs and defendants.

*Christiansburg* construed the language of Title VII of the Civil Rights Act of 1964, which in relevant part provided that the court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U. S. C. § 2000e–5(k). We had earlier held, interpreting the cognate provision of Title II of that Act, 42 U. S. C. § 2000a–3(b), that a prevailing plaintiff "should ordinarily

---

745 F. 2d 142, 148–149 (CA2 1984); *Video Views, Inc.* v. *Studio 21, Ltd.,* 925 F. 2d 1010, 1022 (CA7), cert. denied, 502 U. S. 861 (1991); *Reader's Digest Assn., Inc.* v. *Conservative Digest, Inc.,* 821 F. 2d 800, 809 (CADC 1987). On the other hand, the Fourth and Eleventh Circuits have been identified as following an "evenhanded" approach similar to that of the Third Circuit. See, *e. g., Sherry Manufacturing Co.* v. *Towel King of Florida, Inc.,* 822 F. 2d 1031, 1034–1035, n. 3 (CA11 1987); *Cohen* v. *Virginia Electric & Power Co.,* 617 F. Supp. 619, 620–623 (ED Va. 1985), aff'd on other grounds, 788 F. 2d 247 (CA4 1986).

recover an attorney's fee unless some special circumstances would render such an award unjust." *Newman* v. *Piggie Park Enterprises, Inc.,* 390 U. S. 400, 402 (1968). This decision was based on what we found to be the important policy objectives of the Civil Rights statutes, and the intent of Congress to achieve such objectives through the use of plaintiffs as " 'private attorney[s] general.'" *Ibid.* In *Christiansburg, supra,* we determined that the same policy considerations were not at work in the case of a prevailing civil rights defendant. We noted that a Title VII plaintiff, like a Title II plaintiff in *Piggie Park,* is "the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.'" 434 U. S., at 418. We also relied on the admittedly sparse legislative history to indicate that different standards were to be applied to successful plaintiffs than to successful defendants.

Respondent points to our language in *Flight Attendants* v. *Zipes,* 491 U. S. 754, 758, n. 2 (1989), that "fee-shifting statutes' similar language is a 'strong indication' that they are to be interpreted alike." But here we think this normal indication is overborne by the factors relied upon in our *Christiansburg* opinion that are absent in the case of the Copyright Act.[9] The legislative history of § 505 provides no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees. The attorney's fees provision of § 505 of the 1976 Act was carried forward *verbatim* from the 1909 Act with very little discussion.[10] The relevant House Report provides simply:

> "Under section 505 the awarding of costs and attorney's fees are left to the court's discretion, and the section also makes clear that neither costs nor attorney's fees

---

[9] Additionally, we note that Congress, in enacting § 505 of the 1976 Copyright Act, could not have been aware of the *Christiansburg* dual standard as *Christiansburg* was not decided until 1978.

[10] For the former provision under the Copyright Act of 1909, see 17 U. S. C. § 116 (1976 ed.).

can be awarded to or against 'the United States or an officer thereof.'" H. R. Rep. No. 94–1476, p. 163 (1976).[11]

See also S. Rep. No. 94–473, p. 145 (1975) (same). Other courts and commentators have noted the paucity of legislative history of § 505. See, *e. g., Cohen* v. *Virginia Electric & Power Co.,* 617 F. Supp. 619, 621 (ED Va. 1985), aff'd on other grounds, 788 F. 2d 247 (CA4 1986). See also Jaszi, 505 And All That—The Defendant's Dilemma, 55 Law & Contemp. Prob. 107, 107–108, and nn. 1, 2 (1992).

The goals and objectives of the two Acts are likewise not completely similar. Oftentimes, in the civil rights context, impecunious "private attorney general" plaintiffs can ill afford to litigate their claims against defendants with more resources. Congress sought to redress this balance in part, and to provide incentives for the bringing of meritorious lawsuits, by treating successful plaintiffs more favorably than successful defendants in terms of the award of attorney's fees. The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public. See *infra,* at 527. In the copyright context, it has been noted that "[e]ntities which sue for copyright infringement as plaintiffs can run the gamut from corporate behemoths to starving artists; the same is true of prospective copyright infringement defendants." *Cohen, supra,* at 622–623.

---

[11] The 1976 Copyright Act did change, however, the standard for awarding costs to the prevailing party. The 1909 Act provided a mandatory rule that "full costs *shall* be allowed." 17 U. S. C. § 116 (1976 ed.) (emphasis added). The 1976 Act changed the rule from a mandatory one to one of discretion. As the 1909 Act indicates, Congress clearly knows how to use mandatory language when it so desires. That Congress did not amend the neutral language of the 1909 rule respecting attorney's fees lends further support to the plain language of § 505—district courts are to use their discretion in awarding attorney's fees and costs to the prevailing party.

We thus conclude that respondent's argument based on our fee-shifting decisions under the Civil Rights Act must fail.[12]

Respondent next argues that the policies and objectives of § 505 and of the Copyright Act in general are best served by the "dual approach" to the award of attorney's fees.[13] The most common reason advanced in support of the dual approach is that, by awarding attorney's fees to prevailing plaintiffs as a matter of course, it encourages litigation of meritorious claims of copyright infringement. See, e. g., *McCulloch* v. *Albert E. Price, Inc.*, 823 F. 2d 316, 323 (CA9 1987) ("Because section 505 is intended in part to encourage the assertion of colorable copyright claims, to deter infringement, and to make the plaintiff whole, fees are generally awarded to a prevailing plaintiff") (citations omitted); *Diamond* v. *Am-Law Publishing Corp.*, 745 F. 2d 142, 148 (CA2

---

[12] We note that the federal fee-shifting statutes in the patent and trademark fields, which are more closely related to that of copyright, support a party-neutral approach. Those statutes contain language similar to that of § 505, with the added proviso that fees are only to be awarded in "exceptional cases." 35 U. S. C. § 285 (patent) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party"); 15 U. S. C. § 1117 (trademark) (same). Consistent with the party-neutral language, courts have generally awarded attorney's fees in an evenhanded manner based on the same criteria. For patent, see, e. g., *Eltech Systems Corp.* v. *PPG Industries, Inc.*, 903 F. 2d 805, 811 (CA Fed. 1990) ("[T]here is and should be no difference in the standards applicable to patentees and infringers who engage in bad faith litigation"). For trademark, see, e. g., *Motown Productions, Inc.* v. *Cacomm, Inc.*, 849 F. 2d 781, 786 (CA2 1988) (exceptional circumstances include cases in which losing party prosecuted or defended action in bad faith); but see *Scotch Whisky Assn.* v. *Majestic Distilling Co.*, 958 F. 2d 594, 599 (CA4) (finding in the legislative history that prevailing defendants are to be treated more favorably than prevailing plaintiffs), cert. denied, 506 U. S. 862 (1992).

[13] Respondent points to four important interests allegedly advanced by the dual standard: (1) it promotes the vigorous enforcement of the Copyright Act; (2) it distinguishes between the wrongdoers and the blameless; (3) it enhances the predictability and certainty in copyrights by providing a relatively certain benchmark for the award of attorney's fees; and (4) it affords copyright defendants sufficient incentives to litigate their defenses.

1984) (same). Indeed, respondent relies heavily on this argument. We think the argument is flawed because it expresses a one-sided view of the purposes of the Copyright Act. While it is true that *one* of the goals of the Copyright Act is to discourage infringement, it is by no means the *only* goal of that Act. In the first place, it is by no means always the case that the plaintiff in an infringement action is the only holder of a copyright; often times, defendants hold copyrights too, as exemplified in the case at hand. See *Lieb* v. *Topstone Industries, Inc.*, 788 F. 2d, at 155 (noting that "in many cases the defendants are the [copyright] holders").

More importantly, the policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement. The Constitution grants to Congress the power "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U. S. Const., Art. I, § 8, cl. 8. We have often recognized the monopoly privileges that Congress has authorized, while "intended to motivate the creative activity of authors and inventors by the provision of a special reward," are limited in nature and must ultimately serve the public good. *Sony Corp. of America* v. *Universal City Studios, Inc.*, 464 U. S. 417, 429 (1984). For example, in *Twentieth Century Music Corp.* v. *Aiken*, 422 U. S. 151, 156 (1975), we discussed the policies underlying the 1909 Copyright Act as follows:

> "The limited scope of the copyright holder's statutory monopoly . . . reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. The immediate effect of our copyright law is to secure a fair return for an 'author's' creative labor. But the ultimate aim is, by

this incentive, to stimulate artistic creativity for the general public good." (Footnotes omitted.)

We reiterated this theme in *Feist Publications, Inc.* v. *Rural Telephone Service Co.*, 499 U. S. 340, 349–350 (1991), where we said:

> "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." (Citations omitted.)

Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement. In the case before us, the successful defense of "The Old Man Down the Road" increased public exposure to a musical work that could, as a result, lead to further creative pieces. Thus a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.

Respondent finally urges that the legislative history supports the dual standard, relying on the principle of ratification. See *Lorillard* v. *Pons*, 434 U. S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change . . ."). Respondent surveys the great number of lower court cases interpreting the identical provision in the 1909 Act, 17

U. S. C. § 116 (1976 ed.), and asserts that "it was firmly established" that prevailing defendants should be awarded attorney's fees only where the plaintiff's claim was frivolous or brought with a vexatious purpose. Brief for Respondent 40–45. Furthermore, respondent claims that Congress was aware of this construction of former § 116 because of two copyright studies submitted to Congress when it was studying revisions to the Act. W. Strauss, Damage Provisions of the Copyright Law, Study No. 22 (hereinafter Strauss Study), and R. Brown, Operation of the Damage Provisions of the Copyright Law: An Exploratory Study, Study No. 23 (hereinafter Brown Study), Studies Prepared for Subcommittee on Patents, Trademarks, and Copyrights, 86th Cong., 2d Sess. (H. Judiciary Comm. Print 1960).

Before turning to the import of the two studies and the cases decided under the 1909 Act, we summarize briefly the factual background of *Lorillard*, whence comes the statement upon which respondent relies. There the question was whether there was a right to jury trial in an action for lost wages under the Age Discrimination in Employment Act of 1967 (ADEA). In enacting that statute, Congress provided, *inter alia*, that the provisions of the ADEA were to be "enforced in accordance with the 'powers, remedies and procedures'" of specified sections of the Fair Labor Standards Act (FLSA), 81 Stat. 604, 29 U. S. C. § 626(b). *Lorillard*, 434 U. S., at 580. In the three decided cases which had treated the right to jury trial under the FLSA, each court had decided that there was such a right. In enacting the ADEA, "Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation." *Id.*, at 581.

Here, by contrast, the Strauss and Brown Studies deal only briefly with the provision for the award of attorney's fees. In the Strauss Study, the limited discussion begins with a quote to A. Weil, American Copyright Law 530–531

(1917), for an explanation of the "discretionary awarding of attorney's fees":

> " 'The amount of money frequently involved in copyright letigation *[sic]*, especially on the part of the defendant is trifling. The expense of any letigation *[sic]* is considerable. Unless, therefore, some provision is made for financial protection to a litigant, if successful, it may not pay a party to defend rights, even if valid, a situation opposed to justice . . . . It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent . . . .' " Strauss Study 31.

The study then notes that the pending bills contemplate no change in the attorney's fees provision and concludes with the simple statement "[t]he cases indicate that this discretion has been judiciously exercised by the courts." *Ibid.*[14] This

---

[14] In a footnote, the Strauss Study lists several cases exemplifying the courts' use of discretion. None of these cases explicitly require a dual standard of awarding attorney's fees, but instead offer various reasons for awarding or not awarding attorney's fees to the prevailing party. Cases cited by the study involving prevailing defendants: *Overman* v. *Loesser*, 205 F. 2d 521, 524 (CA9 1953) (denying counsel fees because there was "no indication that the appeal was pursued in bad faith" and "the principal question [was] a complex question of law"); *Official Aviation Guide Co.* v. *American Aviation Associates*, 162 F. 2d 541, 543 (CA7 1947) (denying attorney's fee where "[t]he instant case was hard fought and prosecuted in good faith, and . . . presented a complex problem in law"); *Rosen* v. *Lowe's Inc.*, 162 F. 2d 785 (CA2 1947) (defendant prevailed; no discussion of attorney's fees); *Advertisers Exchange, Inc.* v. *Anderson*, 144 F. 2d 907 (CA8 1944) (denying attorney's fee without comment in case involving defective copyright notice); *Lewys* v. *O'Neill*, 49 F. 2d 603, 618 (SDNY 1931) (awarding fees where plaintiff's case was "wholly synthetic"); *Metro Associated Services, Inc.* v. *Webster City Graphic, Inc.*, 117 F. Supp. 224 (ND Iowa 1953) (denying attorney's fee without explanation where plaintiff filed defective copyright); *Lowenfels* v. *Nathan*, 2 F. Supp. 73, 80 (SDNY 1932) (awarding fees where "[t]he most earnest advocate of the plaintiff's side . . . could not . . . possibly find" any plagiarism by the defendant);

limited discussion of attorney's fees surely does not constitute an endorsement of a dual standard.

The Brown Study was intended as a supplement to the Strauss Study and, *inter alia*, provides information from a survey distributed to practitioners about the practical work-

*Jerome* v. *Twentieth Century-Fox Film Corp.*, 71 F. Supp. 914, 915 (SDNY 1946) (denying fee where court "[could] very well understand how plaintiff was driven to some litigation, although the theory of [the] action . . . was not supported by the proof"), 7 F. R. D. 190 (SDNY 1947), aff'd, 165 F. 2d 784 (CA2 1948).

Cases cited by the study involving prevailing plaintiffs: *Advertisers Exchange, Inc.* v. *Hinkley*, 199 F. 2d 313, 316 (CA8 1952) (denying an attorney's fee where plaintiff's counsel attempted to inflate and exaggerate plaintiff's claim), cert. denied, 344 U. S. 921 (1953); *Ziegelheim* v. *Flohr*, 119 F. Supp. 324, 329 (EDNY 1954) (court denied attorney's fee "since it appears to have . . . been a fairly common practice for publishers of [prayer books] to copy rather freely from each other, and since much of plaintiff's book was in the public domain, and defendant honestly, but mistakenly, believed that plaintiff was illegally attempting to copyright and monopolize the printing of ancient prayers"); *Edward B. Marks Music Corp.* v. *Borst Music Pub. Co.*, 110 F. Supp. 913 (NJ 1953) (court noted only that it would not award attorney's fee because such award is discretionary); *Stein* v. *Rosenthal*, 103 F. Supp. 227, 232 (SD Cal. 1952) (awarding attorney's fees of $3,500 as an amount "reasonably necessary to redress the infringement of plaintiffs' copyright"); *Northern Music Corp.* v. *King Record Distributing Co.*, 105 F. Supp. 393, 401 (SDNY 1952) (noting that prevailing plaintiff entitled to receive a reasonable attorney's fee to be assessed by the court); *White* v. *Kimmell*, 94 F. Supp. 502, 511 (SD Cal. 1950) (copyright holder, who was a successful defendant in a declaratory judgment action, was awarded costs but denied attorney's fee award without elaboration); *M. Witmark & Sons* v. *Pastime Amusement Co.*, 298 F. 470, 482–483 (EDSC 1924) (court awarded a moderate attorney's fee after noting that full allowance "would bear too heavily upon the defendant, in view of the character of the infringement and the circumstances surrounding it; but, if no fee should be allowed at all in such cases, it would probably result in many cases in a practical denial of the rights of copyright owners").

The study also cited to *Jewell-LaSalle Realty Co.* v. *Buck*, 283 U. S. 202 (1931), a case that did not involve attorney's fees, but instead addressed the damages provision of § 25 of the 1909 Act, 35 Stat. 1081.

ings of the 1909 Copyright Act.[15]   It also does not endorse a standard of treating prevailing plaintiffs and defendants differently.   At one point, the study notes that "courts do not usually make an allowance at all if an unsuccessful plaintiff's claim was not 'synthetic, capricious or otherwise unreasonable,' or if the losing defendant raised real issues of fact or law."   Brown Study 85.[16]

Our review of the prior case law itself leads us to conclude that there was no settled "dual standard" interpretation of former § 116 about which Congress could have been aware. We note initially that at least one reported case stated no reason in awarding attorney's fees to successful defendants. See, e. g., Marks v. Leo Feist, Inc., 8 F. 2d 460, 461 (CA2 1925) (noting that the Copyright Act gave courts "absolute discretion," the court awarded attorney's fees to prevailing defendant after plaintiff voluntarily dismissed suit).   More importantly, while it appears that the majority of lower courts exercised their discretion in awarding attorney's fees

---

[15] To this extent, the Brown Study focuses more on the effect that the prospect of an award of attorney's fees has on decisions to litigate or to settle cases.   Based on its interview sources, the study concluded that the likelihood of getting a fee award is so problematic that "it is not a factor" that goes into the decision to settle or litigate.   Brown Study 85.   The report also noted that its observations about attorney's fees "are not intended as an exhaustive treatment of the subject" and that "[attorney's fees'] deterrent effect on ill-founded litigation, whether by plaintiffs or defendants, is outside the scope of this inquiry."   Id., at 85–86.

[16] Citing to Cloth v. Hyman, 146 F. Supp. 185, 193 (SDNY 1956) (it is proper to award fees to prevailing defendant when copyright action is brought in bad faith, with a motive to "vex and harass the defendant," or where plaintiff's claim utterly lacks merit).   The Brown Study also included cites to Eisenschiml v. Fawcett Publications, Inc., 246 F. 2d 598, 604 (CA7) (reversing attorney's fee award to prevailing defendant as an abuse of discretion where plaintiff's claim was not entirely without merit and involved a close question of law), cert. denied, 355 U. S. 907 (1957); Marks v. Leo Feist, Inc., 8 F. 2d 460, 461 (CA2 1925) (awarding attorney's fees to prevailing defendant after plaintiff voluntarily dismissed suit).

to prevailing defendants based on a finding of frivolousness or bad faith, not all courts expressly described the test in those terms.[17]  In fact, only one pre-1976 case expressly endorsed a dual standard. *Breffort* v. *I Had a Ball Co.*, 271 F. Supp. 623 (SDNY 1967).[18]  This is hardly the sort of uniform construction that Congress might have endorsed.

---

[17] See, *e. g.*, *Shroeder* v. *William Morrow & Co.*, 421 F. Supp. 372, 378 (ND Ill. 1976) (refusing to award prevailing defendant an attorney's fee because plaintiff's action was "prosecuted in good faith and with a reasonable likelihood of success"), rev'd on other grounds, 566 F. 2d 3 (CA7 1977); *Kinelow Publishing Co.* v. *Photography In Business, Inc.*, 270 F. Supp. 851, 855 (SDNY 1967) (denying fee award to prevailing defendant because plaintiff's claims, while "lacking in merit," were not "unreasonable or capricious"); *Burnett* v. *Lambino*, 206 F. Supp. 517, 518–519 (SDNY 1962) (granting fee award to prevailing defendant where "asserted claim of infringement was so demonstrably lacking in merit that bringing it was clearly unreasonable"); *Cloth* v. *Hyman, supra*, at 193 (noting that it is proper to award fees when a copyright action is brought in bad faith, with a motive to "vex and harass the defendant," or where plaintiff's claim utterly lacks merit); *Loews, Inc.* v. *Columbia Broadcasting System, Inc.*, 131 F. Supp. 165, 186 (SD Cal. 1955) (denying prevailing defendant fee award where question presented in the case "was a nice one," and there are "no authorities squarely in point to guide the litigants or their counsel"), aff'd, 239 F. 2d 532 (CA9 1956), aff'd, 356 U. S. 43 (1958); *Krafft* v. *Cohen*, 38 F. Supp. 1022, 1023 (ED Pa. 1941) (denying fee award to prevailing defendant where claim brought "in good faith," and evidence demonstrated appropriation); *Lewys* v. *O'Neill*, 49 F. 2d, at 618 (awarding fees to prevailing defendant because plaintiff's case was "wholly synthetic").

[18] That court concluded that "the considerations prompting an award of fees to a successful plaintiff must of necessity differ from those determining whether a prevailing defendant is entitled to such an award." *Breffort*, 271 F. Supp., at 627.  As support, the court stated: "The purpose of an award of counsel fees to a plaintiff is to deter copyright infringement. . . . In the case of a prevailing defendant, however, prevention of infringement is obviously not a factor; and if an award is to be made at all, it represents a penalty imposed upon the plaintiff for institution of a baseless, frivolous, or unreasonable suit, or one instituted in bad faith." *Ibid.*  As we have already explained, *supra*, at 527, such is too narrow a view of the purposes of the Copyright Act because it fails to adequately consider the important role played by copyright defendants.  See also

In summary, neither of the two studies presented to Congress, nor the cases referred to by the studies, support respondent's view that there was a settled construction in favor of the "dual standard" under § 116 of the 1909 Copyright Act.

We thus reject each of respondent's three arguments in support of the dual standard. We now turn to petitioner's argument that § 505 was intended to adopt the "British Rule." Petitioner argues that, consistent with the neutral language of § 505, both prevailing plaintiffs and defendants should be awarded attorney's fees as a matter of course, absent exceptional circumstances. For two reasons we reject this argument for the British Rule.

First, just as the plain language of § 505 supports petitioner's claim for disapproving the dual standard, it cuts against him in arguing for the British Rule. The statute says that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." The word "may" clearly connotes discretion. The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion.

Second, we are mindful that Congress legislates against the strong background of the American Rule. Unlike Britain where counsel fees are regularly awarded to the prevailing party, it is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees. *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 247–262 (1975) (tracing the origins and development of the American Rule); *Flight Attendants* v. *Zipes*, 491 U. S., at 758. While § 505 is one situation in which

---

*Cohen* v. *Virginia Electric & Power Co.*, 617 F. Supp., at 621–622 (tracing the evolution of the Second Circuit's dual standard rule and concluding that earlier cases upon which it supposedly rests do not *require* bad faith or frivolousness—"[the dual standard rule] is the culmination of a long line of bootstrapping from nothing to something").

Congress has modified the American Rule to allow an award of attorney's fees in the court's discretion, we find it impossible to believe that Congress, without more, intended to adopt the British Rule. Such a bold departure from traditional practice would have surely drawn more explicit statutory language and legislative comment. Cf. *Isbrandtsen Co.* v. *Johnson*, 343 U. S. 779, 783 (1952) ("Statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident"). Not surprisingly, no court has held that § 505 (or its predecessor statute) adopted the British Rule.

Thus we reject both the "dual standard" adopted by several of the Courts of Appeals and petitioner's claim that § 505 enacted the British Rule for automatic recovery of attorney's fees by the prevailing party. Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. "There is no precise rule or formula for making these determinations," but instead equitable discretion should be exercised "in light of the considerations we have identified." *Hensley* v. *Eckerhart*, 461 U. S. 424, 436–437 (1983).[19] Because the Court of Appeals erroneously held petitioner, the prevailing defendant, to a more stringent standard than that applicable to a prevailing

---

[19] Some courts following the evenhanded standard have suggested several nonexclusive factors to guide courts' discretion. For example, the Third Circuit has listed several nonexclusive factors that courts should consider in making awards of attorney's fees to any prevailing party. These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb* v. *Topstone Industries, Inc.*, 788 F. 2d 151, 156 (1986). We agree that such factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.

plaintiff, its judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, concurring in the judgment.

In my view, the Court's opinion is flatly inconsistent with our statutory analysis in *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412 (1978). Because I disagree with that analysis, however, and because I believe the Court adopts the correct interpretation of the statutory language at issue in this case, I concur in the judgment.

In *Christiansburg*, the Court interpreted the attorney's fee provision of Title VII of the Civil Rights Act of 1964, which states that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs . . . ." 42 U. S. C. § 2000e–5(k) (1988 ed., Supp. III). In this case, the Court construes the attorney's fee provision of the Copyright Act of 1976, which states that "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U. S. C. § 505. As the Court observes, the two provisions contain "virtually identical language." *Ante*, at 522. After today's decision, however, they will have vastly different meanings.

Under the Title VII provision, a prevailing plaintiff "ordinarily is to be awarded attorney's fees in all but special circumstances," *Christiansburg*, 434 U. S., at 417, whereas a prevailing defendant is to be awarded fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation," *id.*, at 421. By contrast, under the Court's decision today, prevailing plaintiffs and defendants in the copyright context "are to be treated alike," and "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Ante*, at 534.

Interestingly, the Court does not mention, let alone discuss, *Christiansburg*'s statutory analysis. We began that

analysis by considering the *Christiansburg* petitioner's argument:

> "Relying on what it terms 'the plain meaning of the statute,' [petitioner] argues that the language of [the attorney's fee provision] admits of only one interpretation: 'A prevailing defendant is entitled to an award of attorney's fees on the same basis as a prevailing plaintiff.'" 434 U. S., at 418.

We summarily rejected this contention, stating that "the permissive and discretionary language of the statute does not even invite, let alone require, such a mechanical construction." *Ibid.* We opined that the language "provide[s] no indication whatever of the circumstances under which either a plaintiff or a defendant should be entitled to attorney's fees." *Ibid.* (emphasis deleted). Turning to the "equitable considerations" embodied in the statute's policy objectives and legislative history, *id.*, at 418–420, we stated that those considerations counseled against petitioner's position—a position we concluded was "untenable," *id.*, at 419.

Today, confronting a provision "virtually identical" to that at issue in *Christiansburg*, the Court adopts precisely the interpretation that *Christiansburg* rejected as "mechanical" and "untenable." The Court states that "the plain language of § 505 supports petitioner's claim for disapproving the dual standard," *ante*, at 533, and that the language "gives no hint that successful plaintiffs are to be treated differently from successful defendants," *ante*, at 522. Thus, the Court replaces the "dual" standard adopted by the Ninth Circuit with an "evenhanded" approach, under which district courts will apply the same standard to prevailing plaintiffs and defendants when deciding whether to award fees. *Ante*, at 534–535, and n. 19.

It is difficult to see how the Court, when faced with "virtually identical" language in two provisions, can hold that a given interpretation is required by the "plain language" in

one instance, but reject that same interpretation as "mechanical" and "untenable" in the other. After today's decision, Congress could employ the same terminology in two different attorney's fee statutes, but be quite uncertain as to whether the Court would adopt a "dual" standard (that is, reject the "mechanical" construction) or apply an "evenhanded" rule (that is, adopt the "plain meaning").

Such an inconsistent approach to statutory interpretation robs the law of "the clarity of its command and the certainty of its application." *Doggett* v. *United States,* 505 U. S. 647, 669 (1992) (THOMAS, J., dissenting). Indeed, we repeatedly have sought to avoid this sort of inconsistency in our fee award decisions. See, *e. g., Burlington* v. *Dague,* 505 U. S. 557, 562 (1992) ("case law construing what is a 'reasonable' fee applies uniformly to all" fee-shifting statutes using the term); *Ruckelshaus* v. *Sierra Club,* 463 U. S. 680, 691 (1983) ("similar attorney's fee provisions should be interpreted *pari passu*"); *Hensley* v. *Eckerhart,* 461 U. S. 424, 433, n. 7 (1983) (the standards "set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"). See also *Flight Attendants* v. *Zipes,* 491 U. S. 754, 758, n. 2 (1989) ("fee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike"); *Northcross* v. *Board of Ed. of Memphis City Schools,* 412 U. S. 427, 428 (1973) *(per curiam)* ("[S]imilarity of language . . . is, of course, a strong indication that . . . two [attorney's fee] statutes should be interpreted *pari passu*").

The Court recognizes the general principle that similar fee provisions are to be interpreted alike, *ante,* at 523, but states that the principle does not govern this case because the factors that guided our interpretation in *Christiansburg*—the policy objectives and legislative history of the statute—do not support the adoption of a "dual" standard in this context. See *ante,* at 522–525. The Court's analysis, however, rests on the mistaken premise—a premise implicit in *Christians-*

*burg*—that whether we construe a statute in accordance with its plain meaning depends upon the statute's policy objectives and legislative history. Although attorney's fee provisions may be interpreted "in light of the competing equities that Congress normally takes into account," *Zipes, supra,* at 761, those "equities" cannot dictate a result that is contrary to the statutory language. "Our task is to apply the text, not to improve upon it." *Pavelic & LeFlore* v. *Marvel Entertainment Group, Div. of Cadence Industries Corp.,* 493 U. S. 120, 126 (1989). When the text of the statute is clear, our interpretive inquiry ends. See *Connecticut Nat. Bank* v. *Germain,* 503 U. S. 249, 254 (1992). The Court goes astray, in my view, by attempting to reconcile this case with *Christiansburg.* Rather, it should acknowledge that *Christiansburg* mistakenly cast aside the statutory language to give effect to equitable considerations.

I concur in the judgment, however, because I believe the Court adopts the correct interpretation of the statutory language in this case. As the Court observes, the language of 17 U. S. C. § 505 gives no indication that prevailing plaintiffs and defendants are to be treated differently. See *ante,* at 522, 533. In addition, as the Court states, the use of the word "may" suggests that the determination of whether an attorney's fee award is appropriate is to be left to the discretion of the district courts. *Ante,* at 533. This conclusion finds further support in the full text of § 505, which provides that "the court *in its discretion may allow* the recovery of full costs . . . . [T]he court *may also award* a reasonable attorney's fee to the prevailing party as part of the costs." (Emphasis added.)

Because considerations of *stare decisis* have "special force" in the area of statutory interpretation, *Patterson* v. *McLean Credit Union,* 491 U. S. 164, 172 (1989), I might be hesitant to overrule *Christiansburg* and other cases in which we have construed similar attorney's fee provisions to impose a "dual" standard of recovery. See, *e. g., Hensley, supra,* at

429, and n. 2 (42 U. S. C. § 1988 (1988 ed., Supp. III)); *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air*, 483 U. S. 711, 713, n. 1 (1987) (42 U. S. C. § 7604(d)). But while *stare decisis* may call for hesitation in overruling a dubious precedent, "it does not demand that such a precedent be expanded to its outer limits." *Helling* v. *McKinney*, 509 U. S. 25, 42 (1993) (THOMAS, J., dissenting). I would therefore decline to extend *Christiansburg*'s analysis to other contexts. Because the Court—at least in result, if not in rationale—refuses to make such an extension, I concur in the judgment.