David D. WOODS, Florence L. Woods, Kristine Woods and Benjamin Woods, d/b/a Callicoon Music, Plaintiffs,

v.

BOURNE CO. and American Society of Composers, Authors and Publishers.

No. 89 Civ. 3641 (RO).

United States District Court, S.D. New York.

July 19, 1994.

Deutsch Klagsbrun & Blasband, New York City (David Blasband, Frederick F. Greenman, of counsel), for plaintiffs.

Abeles Clark Osterberg and Prager, New York City (Robert C. Osterberg, of counsel), for defendant Bourne Co.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiffs are the statutory heirs of Harry Woods, the composer/lyricist of "When the Red Robin Comes Bob–Bob–Bobbin' Along". They apply for attorneys' fees following this Court's Opinion reported at 841 F.Supp. 118, familiarity with which is presumed. That opinion awarded them 1) the ASCAP—retained performance royalties and 2) income received by publisher Bourne from various editions of sheet music during the nineteen-year extension of copyright protection under the Copyright Act of 1976, 17 U.S.C. § 304(c) (1988). While this motion for attorneys' fees requires a revisiting of the merits of the underlying action, such is required, for the merits must now be viewed from a different perspective. *Fogerty v. Fantasy, Inc.,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), and *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (3d Cir.1986), which *Fogerty* cites with approval —— U.S. at ——, n. 19, 114 S.Ct. at 1033, n. 19, authorize an award of attorneys' fees in the discretion of the Court if either party in a copyright action has unsuccessfully pressed a position that is objectively unreasonable either in fact or law.[1]

■ Upon review from this perspective, I conclude that the essential fact and law positions taken by publisher Bourne in this litigation were objectively unreasonable, and accordingly grant plaintiffs' motion for attorneys' fees.

■ As I observed in the opinion on the merits, the nineteen-year extension of copyright protection from fifty-six to seventy-five years was designed to benefit the composer.[2] Further, the exceptions under which a publisher did in fact continue to have contractual

---

1. This standard, which I conclude is applicable here, is in addition to the frivolous or vexatious tests which need not be found if objective unreasonableness either in law or fact is found. *Sonja–Kaplin Productions v. Zippi,* 87–5761, 1989 WL 8083 (E.D.Pa. Jan. 31, 1989).

2. Indeed, a composer is even freed to terminate any publishing contract and enter into a new contract with another publisher if desired. Whatever else, the nineteen-year extension was not designed to give further rights to the publisher.

rights and remuneration were not because of a design to protect the publisher, but to protect those who could find themselves injured if their rights were not extended to the same extent that a composer's rights were extended.[3] Thus, the derivative work exception was designed to protect such as a motion picture film-maker who had the expectation that after fifty-six years the song used in the film would be in the public domain but under the new law could find itself prohibited from exploiting its product at all; or similarly a composer who, having obtained rights to develop the music in such a creative way as to be entitled to a separate copyright on the new material and similarly expecting the underlying work to be in the public domain after fifty-six years could find his or her work in jeopardy because of the extension of the original composer's rights. None of these situations, however, were intended as direct benefit to the publisher, although clearly by extending the rights of a derivative creator by continuing the derivative work creator's original contract with the publisher, the effect is that the publisher continues to receive the benefits of such contract. *Id.*

Accordingly, for the publisher to receive income beyond the fifty-six years, it must be by reason of a pre-termination contract with a derivative works creator. But it is here, I conclude that Bourne was objectively unreasonable, both in fact and law, in asserting that every publication of sheet music after the original "lead sheet"[4] was a "derivative work," since this was neither so regarded by

the trade, whose realities make the argument specious,[5] and no printed or performed version of the song before me (with one immaterial exception, *see* 841 F.Supp. at 123) had sufficient creativity to be classified a "derivative" work. *See* 841 F.Supp. at 121–123. This was confirmed by all of the various judicial opinions over many years addressing this subject.[6] The statute itself requires for definition as a derivative work that those portions which are new must be of such creativity as to be entitled to separate copyright.[7] However, Bourne's expert stressed numerous musical changes in various printed scores as evidence of such creativity, though the law has always regarded such as insignificant.[8] In one situation, he misread the harmony to assert the existence of such change.[9] Accordingly, I conclude that Bourne's position was objectively unreasonable both in fact and law as to essential pillars for its position.

Given the foregoing, in the exercise of discretion, attorney's fees are to be awarded to the plaintiffs. I reject Bourne's contention that plaintiffs' application should be denied because their counsel was paid by the Songwriter's Guild. It appears that the Guild is a modestly financed organization that conducted a special campaign among its entire membership to finance this litigation. Here, as probably in most cases, the balance is in favor of a composer or heirs, as opposed to a publisher, although obviously in some other situations this would not be so.[10] Appropriate to consider here is an observation from *M. Witmark and Sons v. Pastime Amusement Co.*, 298 F. 470, 482–483 (E.D.S.C.1924) where the Court awarded a

---

**3.** *Mills Music, Inc. v. Snyder*, 469 U.S. 153, at 175–176, 105 S.Ct. 638, at 651, 83 L.Ed.2d 556 (1984).

**4.** 841 F.Supp. at 120.

**5.** *Id.* at 120–121.

**6.** *Id.* at 122.

**7.** Bourne's contrary reading of this statutory requirement has been asserted and rejected once before in *Bourne Co. v. MPL Communications*, 675 F.Supp. 859, 864, n. 8 (S.D.N.Y.1987).

**8.** Trial transcript at 71–2 and *see generally Woods*, 841 F.Supp. at 122.

**9.** Trial transcript at 85–6.

**10.** *Fogerty, supra*, at ——, 114 S.Ct. at 1030–1 refers to and quotes from a copyright study submitted by W. Strauss to Congress while it was studying the revision to the Act which contains an instructive quotation from A. Weil, American Copyright Law 530–531 (1917), applicable today:

"The amount of money frequently involved in copyright letigation [sic], especially on the part of the defendant is trifling. The expense of any letigation [sic] is considerable. Unless, therefore, some provision is made for financial protection to a litigant, if successful, it may not pay a party to defend rights, even if valid, a situation opposed to justice.... It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent...."

moderate attorney's fee after noting that full allowance

"would bear too heavily upon the defendant, in view of the character of the infringement and the circumstances surrounding it; but, if no fee should be allowed at all in such cases, it would probably result in many cases in a practical denial of the rights of copyright owners".

Given the foregoing, plaintiffs are to be awarded a reasonable attorney's fee. They are to submit documentation to support their claim, following which a conference with the parties will be scheduled by the Court on notice.