USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-1399

 LOTUS DEVELOPMENT CORPORATION,

 Plaintiff, Appellee,

 v.

 BORLAND INTERNATIONAL, INC.,

 Defendant, Appellant,

No. 97-1857

 LOTUS DEVELOPMENT CORPORATION,
 
 Plaintiff, Appellee,
 
 v. 
 
 BORLAND INTERNATIONAL, INC.,
 
 Defendant, Appellant.
 

 APPEALS FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MASSACHUSETTS
 
 [Hon. Douglas P. Woodlock, U.S. District Judge]
 
 

 Before
 
 Stahl, Circuit Judge,
 Campbell, Senior Circuit Judge,
 and Lynch, Circuit Judge.
 
 

 Gary L. Reback, with whom Michael Barclay, Colleen Bal, Wilson
Sonsini Goodrich & Rosati, Peter E. Gelhaar, Katherine L. Parks,
Donnelly, Conroy & Gelhaar, LLP, Steven Brower, and Ginsburg,
Stephan, Oringher & Richman, were on brief for appellant.
 Henry B. Gutman with whom Simpson Thacher & Bartlett, Kerry L.
Konrad, and Lori E. Lesser were on brief for appellee.

May 15, 1998

 STAHL, Circuit Judge. Defendant-appellant Borland
International, Inc. ("Borland") appeals from the district court's
order denying its motion for attorney's fees and costs incurred
during extended litigation concerning its alleged infringement of
plaintiff-appellee Lotus Development Corporation's ("Lotus")
copyright in a computer program, Lotus 1-2-3. Borland, the
prevailing party in this copyright infringement action, now claims
that the district court abused its discretion in declining to award
fees. We affirm.
 I. 
Background 
 Lotus 1-2-3 is a spreadsheet computer program that
enables users to perform various functions and calculations. In
1987, Borland released spreadsheet programs Quattro and Quattro Pro,
which competed with Lotus 1-2-3 and contained virtually identical
copies of the 1-2-3 menu command hierarchy. The inclusion of this
so-called "menu tree" from Lotus 1-2-3 prompted the instant
litigation in 1990, the substance of which is set forth in our prior
opinion. See Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807,
810-811 (1st Cir. 1995). Here we recite only the facts pertinent
to the present appeal. 
 The hard-fought litigation below resulted in four
separate district court opinions (Keeton, U.S.D.J.), culminating in
the district court's conclusion that the 1-2-3 menu tree contained
copyrightable expression and that Borland had thus infringed Lotus's
copyrights in Lotus 1-2-3. On March 9, 1995, we reversed, holding
as a matter of first impression that the 1-2-3 menu command
hierarchy was an uncopyrightable "method of operation" under 17
U.S.C. 102(b). See 49 F.3d at 813-18. Subsequently, the Supreme
Court granted Lotus's petition for certiorari but deadlocked on the
merits, resulting in an affirmance by an equally divided Court. See516 U.S. 233 (1996). 
 After the Supreme Court proceedings, Borland filed a
motion for attorney's fees and "full costs" as the prevailing party
pursuant to 17 U.S.C. 505. Borland claimed that, as a result of
Lotus's suit, it had incurred over $11 million in attorney's fees,
$7.5 million in expert fees, and $1.6 million in other costs. It
sought reimbursement for all of these expenses. Following oral
argument, the district court (Woodlock, U.S.D.J.) denied Borland's
motion. As we explicate below, the district court reasoned, in
essence, that Lotus and Borland had litigated a novel and unsettled
question of copyright law in order to protect their own economic
interests, and thus under Fogerty v. Fantasy, Inc., 510 U.S. 517
(1994)(interpreting 17 U.S.C. 505), an award of fees was not
warranted. Borland now appeals this ruling. 
 II. 
 Discussion
 Pursuant to 17 U.S.C. 505, the district "court in its
discretion may allow the recovery of full costs by or against any
party. . . . The court may also award a reasonable attorney's fee
to the prevailing party as part of the costs." We will disturb a
ruling under section 505 only if the record persuades us that the
trial court "indulged a serious lapse in judgment." Texaco P.R.,
Inc. v. Department of Consumer Affairs, 60 F.3d 867, 875 (1st Cir.
1995).
 In Fogerty, the Supreme Court rejected the "dual standard"
for the award of fees, then in effect in many circuits, which
allowed prevailing plaintiffs to recover attorney's fees almost
automatically under section 505, but which required prevailing
defendants to demonstrate that the plaintiff's claims were frivolous
or brought in bad faith. See 510 U.S. at 534. Finding no basis for
the disparate treatment of plaintiffs and defendants in the text of
section 505, the Fogerty Court held that district courts should
exercise their equitable discretion to award fees in an even-handed
manner, and with the goal of vindicating the overriding purpose of
the Copyright Act: to encourage the production of original literary,
artistic, and musical expression for the public good. See id. at
524, 534. Rather than formulate a specific standard for district
courts to apply, the Court identified a list of nonexclusive factors
that district courts may consider, such as "frivolousness,
motivation, objective unreasonableness (both in the factual and
legal components of the case) and the need in some cases to advance
considerations of compensation and deterrence." Id. at 534 n.19
(citing Lieb v. Topstone Indus., Inc. 788 F.2d 151, 156 (3d Cir.
1986)). Notably, the Fogerty Court eschewed arguments that courts
should employ the so-called "British rule," which mandates the award
of attorney's fees to prevailing parties. See id. at 534.
 In denying Borland's fee application, the district court
reasoned, in part, as follows: 
 Fogerty opened the possibility of the shifting
 of attorney's fees, but it did not embrace a
 regime of the automatic award of attorney's
 fees. Rather it recognized that there is to
 be undertaken an exercise of equitable
 discretion for which there is no precise
 formula.
 . . . 
 
 What we dealt with here is a case dealing with
 what I call the open-textured dimensions of
 the copyright law in which the interstices
 were quite broad and in which judges attempted
 to knit a fabric that maintained the integrity
 of copyright law itself. . . . [T]here was
 merit on both sides, and [the court of appeals
 was] dealing with an area that was . . .
 moving copyright law into a relatively
 uncharted area that would benefit from further
 directions from Congress and in which both
 parties had an important economic interest. 
 I find that the claims made by Lotus
 were meritorious. I also find that this is a
 case in which the various judges . . . had
 different views . . . . 
 . . . 
 
 And so, while I find that this was not
 frivolous, [and that] the claims were
 objectively reasonable . . . that we deal with
 a quite unique set of circumstances as to
 which the larger directions of Fogerty are not
 to make an award of attorney's fees . . . . 

The district court then considered whether an award was warranted
in light of the other factors mentioned in Fogerty: motivation,
compensation, and deterrence. Finding that these factors did not
militate in favor of an award, the court denied fees. 
 Borland mounts both legal and factual challenges to the
district court's decision. We turn first to Borland's claims of
legal error. Borland asserts that the court applied the Fogertystandard incorrectly because it placed two factors, the non-
frivolous nature of the plaintiff's claims and their objective
reasonableness, above all other considerations. Borland contends
that when corporate giants litigate important copyright questions
of first impression, the resulting lack of frivolousness and
objective unreasonableness will invariably preclude a prevailing
defendant from obtaining attorney's fees. This reasoning, Borland
concludes, is no different from the "dual standard" rejected in
Fogerty, and thus, under Fogerty and Edwards v. Red Farm Studio Co.,
109 F.3d 80 (1st Cir. 1997), the district court's analysis is
legally erroneous. 
 Although we agree with Borland that defendants are no
longer required as a matter of law to demonstrate culpable behavior
on the plaintiff's part, see Fantasy v. Fogerty, 94 F.3d 553, 558
(9th Cir. 1996), we disagree with Borland's characterization of the
district court's reasoning. Had the district court taken such a
hard line, Borland would have a strong argument. In Edwards, we
reversed the denial of attorney's fees to a prevailing defendant
because the district court had required a showing of bad faith or
frivolousness. See 109 F.3d at 82. The district court here,
however, committed no such error. Rather, it is evident that the
court recognized that under Fogerty a showing of culpability is not
a prerequisite for awarding fees: after concluding that Lotus's
claims were neither frivolous nor objectively unreasonable, the
court went on to consider the remaining Lieb factors. The district
court merely reasoned, in part, that when a plaintiff prosecutes an
action in good faith, in an unsettled area of law, and with a
reasonable likelihood of success, against a party with similar
financial resources, the prevailing party's case for attorney's fees
is weaker, whether it be a plaintiff or a defendant. This view has
a long history in copyright law, see, e.g., McCulloch v. Albert E.
Price, Inc., 823 F.2d 316, 322 (9th Cir. 1987); Official Aviation
Guide Co. v. American Aviation Assocs., 162 F.2d 541, 542 (7th Cir.
1947), and in no way conflicts with Fogerty's command to treat
prevailing plaintiffs and defendants even-handedly. As a result,
we see no basis for concluding that the district court applied an
incorrect legal standard. 
 Borland next contends that the district court committed
legal error by relying on the Supreme Court's affirmance by an
equally divided court to buttress its conclusion that Borland
narrowly prevailed on the merits. Borland argues that the inference
made by the court, that four Justices of the Supreme Court were
ready to reverse our opinion on the merits, is legally incorrect
because there is no way to ascertain the position of the Justices
on the merits of the litigation. 
 The relevance of this objection to our present analysis
is not obvious to us. At points, the court did refer to the split
on the Supreme Court as some evidence that Lotus's claims had merit
and thus were objectively reasonable. To the extent that Borland
challenges this finding, its challenge is unpersuasive. The fact
remains that Lotus filed this action only after prevailing on a
virtually identical claim that was never appealed against a
different software company. See Lotus Dev. Corp. v. Paperback
Software Int'l, 740 F. Supp. 37 (D. Mass. 1990) (Keeton, U.S.D.J.). 
Although we ultimately held to the contrary, we cannot say that
Lotus's initial decision to rely on Paperback was objectively
unreasonable. Regardless of the meaning of the Supreme Court's
narrow affirmance, the district court's conclusion that Lotus's
chief claim was objectively reasonable is certainly a permissible
one. 
 Borland also contends that the district court's
application of the various Lieb factors was clearly erroneous. SeeLieb, 788 F.2d at 156. The court found that neither party had an
improper motivation in litigating the case, reasoning that both
parties had important economic interests in the litigation and that
there were "no clear signs for judicial determination." The court
also held that the need to advance considerations of compensation
and deterrence did not militate in favor of a fee award. The court
found no "oppression by one party over the other in the ability to
use their financial wherewithal to affect the litigation" and
concluded that when "the parties are litigating a matter of some
importance to the copyright laws, there is no need for deterrence." 
 Borland now contends that the district court erred by
ignoring Lotus's alleged anti-competitive purposes in bringing the
litigation, relying impermissibly on Borland's refusal to settle the
case, and discounting the importance of encouraging copyright
defendants to assert meritorious defenses. Borland notes that it
advanced the interests of copyright law by litigating this case all
the way through the Supreme Court against an unusually wealthy
plaintiff. It also contends that the "vindication" of its own
copyright in Quattro Pro increased the availability of copyrighted
works. Borland concludes that "if ever there were a situation where
the assertion of meritorious defenses should be encouraged, it is
a case involving issues of first impression." 
 None of these contentions provides a basis for overriding
the denial of fees and costs. Both sides proffered evidence on the
issue of whether Lotus had intended to use this litigation to
bankrupt Borland and thus maintain its dominant position in the
spreadsheet market. We cannot say, on the record before us, that
the presence of an impermissible motive on Lotus's part is so clear
that a contrary conclusion could not reasonably be reached. After
all, copyright law often delineates the boundaries of economic
competition. See, e.g., Feist Publications, Inc. v. Rural Tel.
Servs., 499 U.S. 340, 349 (1990) (holding that the plaintiff's
telephone directory lacked originality and thus copyright law did
not bar defendant from copying the information to create a competing
product). Arguably, there is nothing inherently improper about
bringing a claim that is well-founded in law and fact against one's
competitors, even when legal action, if successful, will inflict
severe economic consequences upon them. 
 As for the district court's consideration of the parties'
settlement negotiations, the court did note in its discussion of the
motivation factor that "more careful evaluators of the expense of
litigation might have chosen not to spend" the money to litigate the
case. This statement does give us some concern. Copyright
defendants with strong legal or factual defenses should not be
deterred from litigation by the possibility that their refusal to
settle an invalid claim will be held against them after they
prevail. Such reasoning would conflict with Fogerty's direction
that the award of fees should encourage copyright defendants to
assert meritorious defenses. See 510 U.S. at 527. We are
confident, however, that the court's casual observation regarding
the costs of litigation was not material to its ultimate
determination. Rather, the court relied squarely on the parties'
clear economic interests in pursuing the litigation, about which
there is little to dispute.
 Turning to the need to encourage meritorious defenses, a
copyright defendant's success on the merits in a case of first
impression may militate in favor of a fee award, but we are
unwilling to hold that a successful defense in an important case
necessarily mandates an award of attorney's fees. When close
infringement cases are litigated, copyright law benefits from the
resulting clarification of the doctrine's boundaries. But because
novel cases require a plaintiff to sue in the first place, the need
to encourage meritorious defenses is a factor that a district court
may balance against the potentially chilling effect of imposing a
large fee award on a plaintiff, who, in a particular case, may have
advanced a reasonable, albeit unsuccessful, claim. Fogerty made
clear that courts are to evaluate cases on an individualized basis,
with the primary responsibility resting on the shoulders of the
district judge. Regardless of whether we would have approached the
matter similarly, we are unable to say that the district court's
analysis strikes us as an abuse of that discretion. 
 Borland's final contentions--that the district court
erred by ignoring Borland's "vindication" of its own copyrighted
computer program and Lotus's unusual wealth--are unpersuasive. As
a basis for awarding fees, we see no meaningful distinction between
Borland's vindication of its own copyrighted work and its assertion
of a meritorious defense. The latter necessarily implies the
former. In addition, the district court supportably found that both
parties were financially able to litigate this important case. 
Lotus's unusual wealth in no way alters this conclusion. 
 As an alternative to its argument for all its fees and
costs, Borland claims that the district court erred by not awarding
Borland fees and costs attributable to those portions of the case
in which Lotus's conduct was objectively unreasonable. 
Specifically, Borland claims it was objectively unreasonable for
Lotus (1) to litigate the "functional constraints" issue, seeBorland II, 799 F. Supp. at 221; Borland III, 831 F. Supp. at 207;
(2) to add the "Key Reader" claim in the midst of the case, seeBorland IV, 831 F. Supp. at 230-31; and (3) to prosecute a trial on
damages during the pendency of Borland's successful appeal. 
 The district court denied Borland's motion for "full
costs" covering the entire litigation, but did not explicitly rule
Borland's alternative request for "partial" fees and costs. The
issue of awarding partial fees was, however, argued at some length
during the hearing on Borland's motion, which indicates that the
district court considered Borland's arguments. Although the
district court's silence is troubling, we think it implicit that his
decision that no fees are warranted for the entirety of the case
necessarily encompasses Borland's request for fees resulting from
individual parts of the litigation. In addition, there is no
suggestion in the district court's opinion that it was under the
legally erroneous impression that an award of partial fees was not
allowable under section 505. 
 This case is close, particularly in the lack of analysis
on Borland's partial fee request. If the district court had
decided to award at least some fees, it is difficult to see how that
decision would have been an abuse of discretion either. But the
decision to award fees is not a decision committed to the appellate
court in the first instance. We are thus limited to saying only
that the district court did not abuse its discretion in its
decision. 
 Affirmed. No costs to either party.