Ferraris v. Azimuth                    CV-99-066-M    07/24/02
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Ferraris Medical, Inc.,
      Plaintiff

      v.                                    Civil No. 99-66-M
                                            Opinion No. 2002 DNH 140
Azimuth Corporation,
      Defendant


                          O R D E R


      Having successfully defended the suit brought against it by

Ferraris Medical, Inc. ("Ferraris"), the defendant, Azimuth

Corporation ("Azimuth"), now seeks an award of attorneys' fees,

as well as costs.


      This case was tried to the bench.  As discussed in the

court's decisional order, Opinion No. 2001 DNH 181C, plaintiff's

claims related to Azimuth's manufacture and sale of surgical head

harnesses - devices used by anesthesiologists to secure face

masks and related tubing to the heads of patients during medical

procedures.  Azimuth once purchased head harnesses from Ferraris

for resale under Azimuth's own "SunMed" logo.  Numerous other

resellers in that market also purchased identical surgical head

harnesses from Ferraris for resale, marking them with their own distinct logos.

Azimuth later decided that it could do better by manufacturing its own harnesses, or having them manufactured by others, so it terminated its relationship with Ferraris. The harnesses Azimuth subsequently sold were essentially design copies of those it previously obtained from Ferraris. Azimuth continued to apply its SunMed logo to the harnesses and continued to advertise them in its catalogue in the same manner it advertised the harnesses previously supplied by Ferraris. Azimuth did, however, use a different photograph in its catalogue; it no longer used the photograph of Ferraris-manufactured harnesses but, instead, displayed a new photograph of its own harnesses. Nevertheless, the layout was identical, displaying the harnesses by available sizes.

No doubt upset that Azimuth stopped purchasing Ferraris harnesses for resale, and worse, that it was manufacturing, advertising, and selling virtual copies of its harnesses, Ferraris obtained legal counsel and brought suit. Ferraris sued

2

Azimuth for, among other things, unfair competition, injury to business reputation, copyright infringement, trade dress infringement, and service mark appropriation. Although Ferraris couched its complaint in terms of nearly every conceivable legal cause of action that might arguably apply, it essentially pressed trade dress and copyright infringement claims, as well as a weak service mark appropriation claim.

Several points made in the court's earlier dispositive order ought to be reiterated here. First, Ferraris held no design or other patent rights in the surgical head harnesses it manufactured and sold to various resellers, like Azimuth. Second, Ferraris had no factual or legal basis upon which to claim copyright protection in the photographic display or depiction Azimuth used in its catalogue advertisements of its own SunMed harnesses - that depiction was plainly and unarguably in the public domain, as Ferraris knew or should well have known. Third, Ferraris had no registered trade mark rights in the harnesses as designed or as marked with the SunMed logo when it filed suit. Fourth, Ferraris had no legitimate legal or factual basis to assert "service mark" protection in the photographic

3

display used by Azimuth, and no basis whatever for claiming that Azimuth somehow appropriated a service mark belonging to Ferraris. In addition, the trial evidence revealed (and this was not a close or even arguable point) that Ferraris had no legal or factual basis upon which to claim that its harness design was either non-functional or had acquired secondary meaning, essential prerequisites to claiming unregistered trade dress protection. See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205 (2000); I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27 (1st Cir. 1998).[1]

Given these circumstances, Azimuth says it ought to be awarded attorneys' fees incurred in defending what amounted to a frivolous lawsuit. The court agrees.

---

[1] The only relevant evidence on this point was produced by Azimuth, which established, through the expert opinion testimony of an anesthesiologist, that the surgical harness design was decidedly functional: round holes in the head piece allowed for uniform expansion as well as aeration of the scalp; tapered straps facilitated secure fastening and uniform fit. Moreover, since Ferraris itself affixed logos belonging to numerous other resellers on its harnesses, which were then sold in the same market as Ferraris's harnesses, but under different names, Ferraris could hardly have thought, in good faith, that its harness design acquired secondary meaning – that is, some recognized understanding among consumers in the relevant market that Ferraris manufactured the harnesses sold under the various private labels.

**Lanham Act**

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorneys fees to the prevailing party." 15 U.S.C. § 1117(a). While bad faith is not a necessary precondition to an award, it will suffice, as will willfulness short of bad faith, when equitable considerations justify an award and the case is "exceptional." See Tamko Roofing Products, Inc. v. Ideal Roofing Co. Ltd., 282 F.3d 23, 32 (1st Cir. 2002). "It is the totality of the circumstances, rather than a particular item alone, that suffices for an award of attorneys' fees." Id., at 33.

In this case, Azimuth prevailed, entitling it to recover fees if the case is exceptional and plaintiff's suit was oppressive. See S Industries, Inc. v. Centra 2000, Inc., 249 F.3d 625 (7th Cir. 2001). "A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." Id., at 627 (citation omitted).

5

Plaintiff's suit was "oppressive" in that its Lanham Act claims were completely lacking in merit, to the point of being frivolous. As to its trade dress claim, Ferraris knew it had to prove both non-functionality and acquisition of secondary meaning in order to prevail, Wal-Mart Stores, Inc., supra; I.P. Lund, supra, yet it offered no evidence of non-functionality, and even failed to convey any reasonable basis for thinking its harness design was anything but functional. The court can only conclude that neither Ferraris nor its legal counsel adequately investigated the facts.

With regard to its federal service mark claim, plaintiff knew that its federal service mark application had been abandoned. It also necessarily knew that its state service mark claim was without merit, since it never used the mark in connection with the sale of services. In fact, the defendant never used the mark (which consisted of a drawing) in any manner at all. As to its unfair competition claim, plaintiff utterly failed to offer any evidence of public deception, an essential element. See Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F. Supp. 491, 500 (D.N.H. Cir. 1996).

6

Moreover, as defendant correctly points out, plaintiff (or, its counsel) pursued the litigation in a manner that left all involved wondering just what its claims actually were, and generally created unnecessary work for both defendant and the court in trying to determine (and respond to) plaintiff's ever-emergent theories.

Plaintiff also consistently failed to timely comply with procedural requirements, utterly failing, for example, to disclose information supporting its damages claims prior to trial, as directed.  Overall, while civil enough in his handling of the case, plaintiff's counsel generally behaved in an obscure and indefinite manner to the point of successfully masking what turned out to be unsupported and meritless claims when he was finally required to put on his case.

## Copyright Act

The Copyright Act also provides for an award of attorneys' fees, but under less strict standards.  Under Section 505 of the Act, a district "court in its discretion may allow the recovery of full costs by or against any party . . . .  The court may also

award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.

In weighing an award of fees, the court should consider a number of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in some cases to advance considerations of compensation and deterrence."  Lotus Development Corporation v. Borland International, Inc., 140 F.3d 70, 73 (1st Cir. 1998) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19 (1994)).  At the heart of the court's inquiry are equitable considerations.  And, while frivolous claims or claims brought in bad faith certainly will support an award of fees, even a "plaintiff's decision to bring a weak, if nonfrivolous, case and to argue for an unreasonable extension of copyright protection are relevant concerns" that may support a fee award.  Matthews v. Freedman, 157 F.3d 25, 29 (1st Cir. 1998) (citing Fogerty, 510 U.S. at 526-27, and Edwards v. Red Farm Studio Co., 109 F.3d 80, 82-83 (1st Cir. 1997)).  "Depending on other circumstances, a district court could conclude that the

losing party should pay even if all of the arguments made were reasonable." Matthews, 157 F.3d at 29.

Plaintiff started out on the wrong foot when it brought its copyright infringement claim without first registering its copyright. It compounded that misstep when it claimed copyright protection in a work (its catalogue and the photographic depiction of its surgical harnesses) that plainly was in the public domain and not subject to copyright protection (facts within its knowledge, and which unquestionably should have been easily ascertained by counsel). Although defense counsel continually pointed out these problems, plaintiff nevertheless proceeded with its meritless claims, causing defendant to incur additional needless defense costs. Ferraris had neither an arguable factual nor a legal basis to assert those claims.

It seems reasonably evident that plaintiff's motivation in pursuing these unsupported claims was rooted in an effort to deter competition by Azimuth. Plaintiff seemed to be engaged in an effort to obtain, under the Lanham Act or the Copyright Act, that which it could not obtain otherwise - patent protection.

9

It's goal seemed always to be acquisition of monopolistic control over the manufacture and sale of surgical harnesses with the features of those it sold, but it had no legal or factual basis to support a design or other patent claim.  In short, its motivation was tinged with bad faith.

Finally, it seems reasonably clear that while plaintiff's conduct was not so thoroughly objectionable as that engaged in by the plaintiff in S Industries, Inc., supra, still, it was objectionable to the point of warranting an award of fees to advance considerations of compensation and deterrence.  Defendant should not have been required to divert the significant time, attention, and resources required to defend a case that plaintiff (or its counsel) well knew, or well ought to have known, was both factually and legally unsupportable.  Defendant was well within its rights to manufacture and sell surgical harnesses employing functional design features that were not protected by any patent, particularly when its harnesses were clearly embossed with its distinct logo signifying the origin of those products.  Defendant was also well within its rights in advertising its harnesses

10

using a depiction that was in the public domain and in which plaintiff had no protected interest.

Plaintiff's persistence was all the more objectionable because defendant's counsel took pains at every turn to engage plaintiff's counsel in discussions of the facts and law aimed at informing plaintiff of the unsupported and unsupportable nature of its claims.  Yet, plaintiff slogged on, sometimes seeming to recognize the futility of its endeavor, and sometimes vaguely alluding to evidence (never forthcoming) that would support its case.

## Other Claims

Plaintiffs other claims were equally (and derivatively) unsupportable and, necessarily, unsupported.  Detailed analysis is not necessary, because although plaintiff made an effort to fractionalize its basic claims into as many discrete legal theories as it could conjure up, the case was substantially founded upon the Lanham and Copyright Acts.  The basic claim – that defendant infringed on some intellectual property right of

plaintiff - was inextricably intertwined with all of the claims asserted in this case.

## Fee Award

The court determines that Azimuth is entitled to an award of reasonable attorneys' fees under both the Lanham Act and the Copyright Act. It is the prevailing party and this is an exceptional case. Plaintiff's suit was oppressive in that the claims advanced completely lacked merit, were legally unsupportable and factually unsupported, were brought in bad faith in that plaintiff sought to hinder and impede competition without a legitimate basis for doing so, and plaintiff's action unreasonably and oppressively imposed burdens of defense, including substantial and unnecessary costs, upon Azimuth.

The court has reviewed the supporting affidavit and detailed fee statements submitted by defense counsel. As discussed below, additional information is required before a reasonable fee amount can be determined. Once again, however, plaintiff's objection to the fee request, like many of its prior pleadings, is mostly unresponsive, does not discuss the applicable law or controlling

12

standards of review, and does not take specific issue with any itemized entry in defense counsel's detailed fee statements. With regard to the amount claimed, plaintiff's counsel says only that "the asserted total fees sought to be recovered . . . in the amount of $146,282.60 are clearly unreasonable." Document No. 92.

The fee request is generally detailed, though the reader is required to calculate hourly rates for various persons who are identified only by initials - some may be assumed by the calculated rate to be paraprofessionals, but that is not confirmed anywhere. The fee request also seems to include expert witness fees incurred that are probably not recoverable. See West Virginia Univ. Hospitals, Inc. v. Casey, 499 U.S. 83 (1991). Additional explanation and detail would be helpful, and is necessary to a proper computation.

Several collateral developments over the past months involving plaintiff's counsel, as well as the need for additional information regarding defendant's fee request, suggest the value of an interim step before resolving the fee claim. In September

of 2001, plaintiff's counsel, George Kersey, was suspended from the practice of law in New Hampshire for three months (the New Hampshire Supreme Court imposed that reciprocal discipline based on counsel's earlier suspension in Massachusetts). Because he did not comply with the terms of the New Hampshire suspension order, plaintiff's counsel was later suspended indefinitely, pending disbarment proceedings. See Kersey's Case, LD-2001-006 (N.H. May 6, 2002). This court has, in turn, imposed reciprocal discipline under our Local Rules, and plaintiff's counsel is no longer privileged to practice in this court. James E. Townsend, Esq. was appointed by the New Hampshire Supreme Court to collect Mr. Kersey's files, and to take steps necessary to protect the interests of Mr. Kersey's clients.

Since the fee application could be better developed (hourly rates, identity of service providers, elimination of duplicate work or redundant attendance at depositions or court proceedings, etc.), and because Attorney Townsend, or other counsel on behalf of plaintiff, ought to be provided a fair opportunity to review and consider the specifics of the fee application, as well as to respond in a meaningful way, the court will defer consideration

14

of the recoverable fee amount for forty-five (45) days from the date of this order.

During that period the court expects that plaintiff and defendant, with the assistance of counsel, will realistically discuss the matter with a view toward reaching agreement on a reasonable fee award. Defendant should understand that compromise is in order, given the substantial amount claimed, the nature of the claims asserted, and the likelihood that close inspection will undoubtedly result in substantial reductions under the applicable discretionary standard of review. (As noted above, for example, defendant likely cannot recover expert witness fees beyond cost of attendance).

A telephone conference will be scheduled shortly to discuss further briefing and to set dates for submission of an expanded fee application and response. Until advised otherwise, the court will assume that Attorney Townsend will be representing plaintiff until the matter is finally resolved.

15

## Conclusion

Defendant's motion for attorneys' fees (document no. 88) is granted in part and denied in part. It is granted to the extent a fee award will be entered, but denied with respect to the amount requested. A telephonic status conference will be scheduled in the near future to establish a further briefing schedule.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 24, 2002

cc: James E. Townsend, Esq.
    George E. Kersey, Esq.
    Anne S. Mason, Esq.
    Kevin J. Carroll, Esq.