Dr. Patrick **AMADASUN** Plaintiff,

v.

**DREAMWORKS, LLC,** Columbia Pictures Industries, Inc., (subsidiary of Sony Pictures Entertainment Inc.), and the Montecito Picture Company, LLC, Defendants.

No. **CIV.A.1:02 CV 0663 J.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 14, 2005.

See also 107 Fed.Appx. 893.

Bobby–Thompson Chudi Aniekwu, Bobby C. Aniekwu & Associates, Atlanta, GA, Patrick I. Amadasun, Dr., Duluth, GA, for Plaintiff.

Ronald Thomas Coleman, Jr., Michael D. Grider, Parker, Hudson, Rainer & Dobbs, Alison Danaceau, Carlton Fields, PA-Atlanta, Atlanta, GA, for Defendants.

### ORDER

CARNES, District Judge.

This case is presently before the Court on defendants DreamWorks, LLC, Columbia Pictures, Inc., and The Montecito Picture Company, LLC's Renewal of Their

Motion for Attorneys' Fees and Expenses Pursuant to 17 U.S.C. § 505[108]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Renewal of Their Motion for Attorneys' Fees and Expenses Pursuant to 17 U.S.C. § 505[108] should be **GRANTED**.

## BACKGROUND

This case arises out of an alleged copyright infringement and theft of plaintiff Patrick Amadasun's screenplay "Evolution." (Compl. [1] at 1–2.) On March 12, 2002, *pro-se* plaintiff filed a suit against defendants DreamWorks SKG, Columbia Pictures Industries, Inc., Montecito Picture Company, Don Jakoby, David Diamond, and David Weissman alleging copyright infringement under 17 U.S.C. § 101 and 15 U.S.C. § 1051. *Id.* Plaintiff subsequently amended his Complaint to properly identify DreamWorks SKG as DreamWorks LLC and The Montecito Picture Company as The Montecito Picture Company LLC, and to remove Don Jakoby, David Diamond, and David Weissman as defendants. (Pl.'s First Am. Compl. [26] at 1–2.) On August 22, 2002, plaintiff retained counsel. (Notice of Entry of Appearance of Counsel for Pl. [30] at 1.) On May 12, 2003, this Court granted the motion to withdraw made by plaintiff's attorney. (May 12, 2003 Order [82] at 1.)

After a lengthy and contentious discovery period, defendants filed a motion for summary judgment. The Court granted defendants' motion, finding that: (1) plaintiff did not have valid copyright protection to the full screenplay and presented no evidence of direct copying; (2) the movie Evolution was created independently by people who did not have access to plaintiff's works; and (3) plaintiff failed to present evidence sufficient to establish that his copyrighted works and the movie "Evolution" were substantially similar. (August 6, 2003 Order [92] at 35–36, 40, 45.) Plain-

tiff appealed the Court's decision [98]. The Eleventh Circuit Court of Appeals affirmed [104] the Court's conclusions and found no error in the Court's disposition of plaintiff's trademark and state law claims. *Amadasun v. Columbia Pictures, Ind.,* 107 Fed.Appx. 893, 2004 WL 1347067 (11th Cir.2004). While the appeal was pending, defendants filed a motion for attorneys' fees and expenses. (Defs. DreamWorks, LLC, Columbia Pictures, Inc., and The Montecito Picture Company, LLC's, Mot. for Atty's' Fees and Expenses Pursuant to 17 U.S.C. § 505[94] at 1.) This Court denied defendants' motion without prejudice with leave to refile within thirty days of the Eleventh Circuit mandate. (Sept. 11, 2003 Order [101] at 1.) On June 11, 2004, plaintiff petitioned the Eleventh Circuit for rehearing, which was denied on July 29, 2004.

Now pending before the Court is defendants' renewed motion for attorneys' fees. The Court recounts the facts relevant to the claims for attorneys' fees.

## I. Plaintiff's Original Works

In March 1986, plaintiff compiled the materials contained in his research notebooks into a self-published book entitled *"No, Man is not from Ape! The Theories of Absolutism."* (Pl.'s Exs. [80] at Ex. 1; Pl.'s Stmt. of Undisp. Mat. Facts, "PSMF," [80] ¶ 3.) Plaintiff registered this book with the copyright office on July 2, 1997, and was assigned registration number TXu 805—059. (*See* Copyright Registration Txu 805–059, attach. to Pl.'s Exs. [80] at 3.) Plaintiff later changed the title of his book to *"Evolution: The Theories of Absolutism,"* (Defs.' Exs. [56] at App. Ex. 49), and sought additional copyright protection for the same text under the new name. (*See* Copyright Registration for TX 4–919–623, attach. to Pl.'s Exs. [80] at 6.) The text of the book details the results of

his experiments of exposing cells and organisms to various types of radiation and agents—or "mutagene forces"—over a five-year period to determine if the cells would "evolve" or would suffer damage in an attempt "to contradict Darwin's theories of evolution." (Amadasun Dep. at 54.)

Over ten years later, in early 1997, plaintiff wrote and self-published a fictionalized book entitled *"Evolution."* (PSMF ¶ 4.) This book consists of one full screenplay and two separate treatments, or screenplay synopses. The full screenplay was entitled, *"'Evolution' based on the Book 'Evolution: The Theories of Absolutism'"* (hereinafter "plaintiff's screenplay"). (*Id.*) The two separate treatments in plaintiff's book *"Evolution"* were entitled *"Evolution II: Space Invaders"* and *"Evolution III: Evolving Kids."* (PSMF ¶ 4.) In these works, which are purportedly based upon plaintiff's scientific research, plaintiff attempts to dramatize for entertainment what would occur if a "mutagene" were discovered that "overrode the master codon." (Amadasun Dep. at 142.) Plaintiff's stated purpose in dramatizing "evolution" in his works is to "disprove Darwin." (*Id.*) Plaintiff alleged that, in August 1997, he distributed copies of his book *"Evolution"* to approximately fourteen literary agents in New York, California, and Pittsburgh. (PSMF ¶ 6.) Plaintiff later completed a screenplay synopsis for his screenplay entitled *"Evolution"* (hereinafter, "plaintiff's screenplay outline"). (*See "Evolution"* Synopsis, attach. to Defs.' Exs. [56] at App. Tab 56.)

Plaintiff asserted that he obtained copyright protection for his book entitled *"Evolution,"* which was comprised of plaintiff's screenplay and the two screenplay synopses. (PSMF ¶ 8.) In support of this claim, plaintiff referred the Court to a Certificate of Registration from the United States Copyright Office. (*See* Copyright Certificate for TX 4–919–623, attach. as Pl.'s Ex.

▮ at 6; Pl.'s Br. In Opp. To Summ. J. Mot. [80] at 7.) This certificate, however, is not for plaintiff's *"Evolution"* book, but for plaintiff's renamed book *"Evolution: The Theory of Absolutism."* Indeed, the certificate specifically notes that the work being registered was "previously or alternatively entitled" *"No! Man is Not From Ape: The Theory of Absolutism."* (*Id.; see also* Not. Of Filing of Certified Copies From Library of Congress [84].) In addition, the Court found a copy of a registration application for plaintiff's book *"Evolution"* in the record, but he attached to this document *only* his five-page outline for plaintiff's screenplay and not the complete works. (*See* Pl.'s Exs. [80] at 7; Not. of Filing of Certified Copies From Library of Congress [84]) (notably the book *"Evolution,"* comprised of plaintiff's screenplay and two synopses, is absent).

## II. The Other "Evolution" Screenplay

Around the time plaintiff wrote and self-published his fictionalized book entitled *"Evolution,"* Don Jakoby, an established author of motion picture screenplays, developed a screenplay about accelerated Darwinian evolution. (Defs.' Stmt. of Mat. Facts in Supp. of Summ. J. Mot., "SMF," [56] ¶ 1; Pl.'s Resp. to SMF, "PRSMF,"[80] ¶ 2.) Defendants asserted that Jakoby's screenplay was intended to embrace Darwin's theory of natural selection because the alien life mirrors the evolutionary progression of life on Earth, but at a much more accelerated pace. (SMF ¶ 40.) His completed screenplay was circulated to literary agents on April 27, 1998.

Jakoby denied, and plaintiff presented no evidence, that he used or referred to plaintiff's work in generating his screenplay. Plaintiff admitted that he did not submit any of his works to Jakoby. Further, Jakoby did not receive any materials

from anyone at DreamWorks or at Columbia that he used or referred to while creating any version of the script for Evolution. (SMF ¶¶ 7–8.)

Jakoby's agents circulated his screenplay to various production companies and movie studios, including DreamWorks and Image Movers, on April 27, 1998, and Montecito during the summer of 1998. (SMF ¶¶ 10, 12–13; PSMF ¶¶ 20, 22.) On September 10, 1998, Montecito and Jakoby executed a Rights Acquisition and Writing Agreement, under which Montecito optioned the right to produce Jakoby's script into a movie. (SMF ¶ 14.) After attaining the rights to the Jakoby screenplay, Montecito decided to rewrite the script from a science fiction thriller into a comedy. Jakoby was hired to revise his "sci-fi" thriller into a comedy. (SMF ¶ 14; PRSMF ¶ 14.) On December 7, 1999, Montecito engaged writers Diamond and Weissman to rewrite Jakoby's script into a comedy. (SMF ¶ 21.) Their revised Jakoby script eventually became the script for the motion picture "Evolution." (SMF ¶ 21; PSMF ¶ 23.) Plaintiff admitted that did not send any of his materials to Montecito and that he had never communicated with Diamond or Weissman. (Amadasun Dep. at 301; SMF ¶ 22.)

On June 2, 2000, Montecito provided DreamWorks with the Jakoby screenplay as revised by Diamond and Weissman. (SMF ¶ 25.) DreamWorks optioned the screenplay during the summer of 2000. (SMF ¶ 26.) Once it was involved in the project, DreamWorks asserted its contribution to the screenplay script was limited to enhancing the comedic elements of the movie. (SMF ¶ 27.) As part of the effort to press the comedic elements of the movie, on August 11, 2000, DreamWorks again engaged Diamond and Weissman to continue re-writing the script. (SMF ¶ 28.) Mark Haimes, the senior creative executive involved in DreamWorks' creative con-

tributions to the modifications of the screenplay in 2000, had never heard of plaintiff. (SMF ¶ 33.)

On August 29, 2000, Columbia executed an Agreement with DreamWorks. (SMF ¶ 34.) Pursuant to this agreement, Columbia acquired international distribution rights with respect to the movie "Evolution." (SMF ¶ 34.) Columbia's interest in the movie was for financing purposes. (SMF ¶ 34.) In other words, Columbia did not participate in the creative development of the motion picture "Evolution." (SMF ¶ 37.)

### III. History of Plaintiff's Unsolicited Submissions

While plaintiff admitted to never submitting his works to defendant Montecito at any point in time, he claimed he did submit his unsolicited works to both of the other defendants, DreamWorks and Columbia. (PSMF ¶ 9.) Both of these defendants contended, pursuant to a strict policy in place whereby unsolicited submissions are to be returned unread, they did not review plaintiff's submission. (SMF ¶¶ 29, 35.) Plaintiff claimed that the policies either were not strict or were not followed in this case because his submissions to each of these defendants were not returned to him. (PSMF ¶¶ 9, 12.)

As to defendant DreamWorks, plaintiff asserted that he sent his manuscript to the company both in May of 1998 and August of 1999. (PSMF ¶¶ 9–10.) In support of his contention that he submitted his script to DreamWorks on two occasions, plaintiff presented a photocopy of a cover letter dated May 1998 as well as a postage receipt for the August 1999 mailing. (*See* Pl.'s Exs. [80] at 8 & 9.) DreamWorks claimed, however, that its records indicate only one submission was received from plaintiff in August 1999. Because it receives approximately seventy-five unsolicit-

ed submissions every week, the company maintains a database that shows the date an unsolicited submission was received and the date that it was returned to the sender unread. (SMF ¶¶ 30–31.) This database showed one submission by plaintiff and the subsequent return of that submission to plaintiff. (SMF ¶ 32.)

A dispute of fact as to whether Dream-Works returned plaintiff's script to him also existed. Although plaintiff admitted to receiving a letter dated October 7, 1999, from DreamWorks that stated "[o]ur company policy strictly prohibits our consideration of any unsolicited material and therefore, we must decline your request to review the enclosed material," plaintiff asserted that his submissions were not enclosed. (PSMF ¶ 11.) DreamWorks, however, contended that the letter accompanied the return of his submission. (SMF ¶ 18.)

Plaintiff also contended that he submitted two unsolicited copies of his screenplay to Columbia on May 12, 1998 and August 23, 1999. Columbia's records, however, only indicated the receipt of the August 23, 1999 submission. In addition, Columbia has a strict policy that it will not review or consider unsolicited submissions from unknown sources and its uniform practice is to return all unsolicited submissions to the sender unread. (SMF ¶ 35.) Pursuant to this policy, Columbia attempted to return plaintiff's August 1999 unsolicited submission to him, but the package was returned as undeliverable and was then stored in Columbia's legal files. (SMF ¶ 36.) Columbia's legal files are housed in a building separate from Columbia's creative executives and no one other than legal department personnel had access to Columbia's legal files. (SMF ¶ 36.) Based on these facts, plaintiff filed suit contending that defendants had access to his work and relied upon his work without his permission in the development and production of the motion picture *"Evolution."*

## IV. Discovery Conflicts

A major source of discovery conflict concerned the computer hardware and software that plaintiff used to draft his books, screenplays, and outlines. On May 10, 2002, the defense served plaintiff with a request to produce "any and all documents that constitute, refer or relate to any treatment or synopsis" and "any and all documents that constitute, refer, or relate to any screenplay, including drafts thereof" including documents stored electronically. (Mem. in Supp. of Defs.' Mot. to Compel Disc. and to Request Award of Expenses [48] at 5, 8, Ex. A.) Despite repeated requests, plaintiff did not permit defendants to inspect any computer, hard drive, or computer disk purportedly used in drafting his alleged screenplay, "Evolution." (*Id.* at 3, 9.) Plaintiff also failed to produce documents establishing that plaintiff actually submitted a screenplay entitled "Evolution" to agents and third-party movie studios. (*Id.* at 7–8.)

Plaintiff's contention was that he no longer owned the computer he had used in Lagos, Nigeria to prepare the books and screenplays which relate to his claims, and that the location of the computer was unknown. (Pl.'s Resp. in Opp'n of Defs.' Mot. to Compel Disc. and to Req. Award of Expenses, and Br. of Law in Opp'n of the Mot. [50] at 4–5, Ex. 5.) Furthermore, despite a search of his homes in Duluth, Georgia, Lagos, Nigeria, and London, England, plaintiff claimed he was unable to find any computer diskettes that may be responsive to defendants' request for production or the return receipt for scripts delivered to defendants in May 1998. Plaintiff did find and produce return receipts for scripts delivered to various agents in 1997. (*Id.* at 5–6.)

## DISCUSSION

### I. Award of Attorneys' Fees Under Local Rule 7.1B

Defendants Dreamworks, LLC, Columbia Pictures, Inc., and The Montecito Picture Company, LLC filed a renewal of their motion for attorneys' fees and expenses pursuant to 17 U.S.C. § 505. Plaintiff did not respond to their motion. As such, the Court deems the motion unopposed. LR 7.1B, N.D.Ga. Accordingly, the Court **GRANTS** defendants Dreamworks, LLC, Columbia Pictures, Inc., and The Montecito Picture Company, LLC's Renewal of Their Motion for Attorneys' Fees and Expenses Pursuant to 17 U.S.C. § 505. Even if plaintiff had objected to defendants' motion, however, this Court would still grant the motion based on the analysis set forth below.

### II. Award of Attorneys' Fees Under 17 U.S.C. § 505

#### A. Standard

■ The Copyright Act, 17 U.S.C. § 505, provides that in a civil action for copyright infringement, the court, in its discretion, may award "a reasonable attorney's fee to the prevailing party as part of the costs." Consistent with the statutory language, the Supreme Court rejected the idea that this provision requires a court to award attorneys' fees to the prevailing party. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Further, prevailing plaintiffs and prevailing defendants are to be treated alike. *Id.* at 534–35, 114 S.Ct. 1023. The Supreme Court approved a non-exclusive list of factors a court may consider in exercising its discretion to award or deny

fees. *See id.* These factors include " 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' " *Id.* at 535 n. 19, 114 S.Ct. 1023 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir.1986)); *see Mitek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 198 F.3d 840, 842 (11th Cir.1999). In applying these factors, the court should remain faithful to the purposes of the Copyright Act, which include the discouraging of infringement and the enriching of the public through access to creative works. *Id.* at 527, 535 n. 19, 114 S.Ct. 1023.

#### B. The Merits of Defendants' Current Motion

■ Defendants present four reasons in support of their motion for attorneys' fees. First, defendants argue they are entitled to attorneys' fees because they are the prevailing party. (Defs. DreamWorks, LLC, Columbia Pictures, Inc., and The Montecito Picture Company, LLC's, Mem. of Law in Supp. of the Renewal of Their Mot. for Atty's' Fees and Expenses Pursuant to 17 U.S.C. § 505[108] at 5.) Second, defendants argue that plaintiff intentionally delayed litigation and increased defendants' costs. *Id.* Third, defendants argue that plaintiff did not have "reasonable grounds" for his arguments. *Id.* Fourth, the fees and costs incurred by defendants were reasonable. *Id.* As noted, plaintiff did not file an objection to defendants' renewed motion for attorneys' fees.[1]

As to the merits of whether the defendants are entitled to an award of attor-

---

1. Plaintiff did file an objection to defendants' first motion for attorneys' fees and expenses only on the basis that an appeal was pending before the Eleventh Circuit Court of Appeals. (Pl.'s Objection to Defs. DreamWorks, LLC, Columbia Pictures, Inc., and The Montecito

Picture Company, LLC's, Mot. for Atty's' Fees and Expenses Pursuant to 17 U.S.C. § 505 at 1.) Plaintiff did not provide a brief with any factual or legal arguments in support of his objection.

neys' fees, in its August 6, 2003 Order, this Court granted summary judgment in favor of defendants as to plaintiff's copyright infringement, federal trademark, and state law claims. As a result, defendants are clearly the prevailing parties on all claims. The Court next considers the non-exclusive list of factors suggested by the Supreme Court. *See Mitek Holdings, Inc.,* 198 F.3d at 842.

### 1. Frivolousness

■■■ Two elements must be proven for a valid copyright infringement claim: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1246 (11th Cir.1999) (citing *Feist Publ'ns, Inc. v. Rural Tel. Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). If the plaintiff does not have direct proof of copying, the plaintiff may show copying establishing that the defendants had access to the copyrighted work and that the works are "substantially similar." *Benson v. Coca–Cola Co.,* 795 F.2d 973, 974 (11th Cir.1986) *reh'g denied,* 801 F.2d 404 (11th Cir.1986) (en banc).

The record indicates that although plaintiff may have attempted to secure copyright protection for his book *"Evolution,"* he only secured copyright protection for his nonfiction works and the five-page outline for his screenplay. (*See* Not. of Filing of Certified Copies from Library of Congress [84].) This Court found that plaintiff "could not claim any 'derivative protection' for his screenplay and two screenplay synopses found in his fictionalized work *"Evolution"* based on the copyright protection he properly secured for his nonfiction works or for his five-page fictionalized outline," because any derivative works must be separately registered to receive protection. (Aug. 6, 2003 Order [92] at 34.) Thus, the Court concluded that plain-

tiff's full screenplay was not copyright protected. (*Id.* at 35.)

Plaintiff brought a copyright infringement claim against the defendants despite the fact that he did not own, and knew, or should have known that he did not own, valid copyrights for some of his works. Despite plaintiff's lack of copyright protection for his screenplay and two screenplay synopses found in his fictionalized work *"Evolution,"* he brought a claim against defendants alleging that they infringed on these works. Plaintiff knew, or should have known, that one must have a valid copyright to bring a copyright infringement claim. Despite this knowledge, plaintiff brought a copyright infringement claim based on works that were not entitled to copyright protection. As a result, his position was frivolous.

Plaintiff's claim for federal trademark violations was also frivolous because plaintiff "ha[d] not registered trademarks related to his works" when he brought these claims. Because plaintiff did not have registered trademarks for his works and presented *no* evidence of any association in the minds of the public with his books or screenplay outlines, plaintiff had no valid basis for bringing this claim.

### 2. Motivation

The Court is quite skeptical of plaintiff's motivation for filing suit against the defendants because, as previously discussed in the Court's analysis of frivolousness, plaintiff brought copyright infringement claims based on works that lacked a valid copyright, and federal trademark claims on works without federally registered trademarks.

Plaintiff's behavior during discovery increases the Court's skepticism of his good faith. His actions caused a lengthy and contentious discovery period. After plaintiff's request, this Court initially expanded

the discovery period from four to six months. Days before discovery was set to expire, plaintiff again moved to extend discovery by 120 days, which the Court denied due to "the Court's concerns about plaintiff's motives and lack of justification." (April 16, 2003 Order [78] at 10.) Plaintiff also actively resisted being deposed. His first notice for deposition was July 9, 2002, but, per his request, plaintiff's deposition was rescheduled. However, on August 22, 2002, plaintiff's counsel unilaterally canceled the rescheduled deposition. Thus, it took two months for defendants to schedule plaintiff's deposition.

After defendants answered his discovery requests, plaintiff retained counsel. Instead of simply giving these answers to his attorney, plaintiff requested an additional, and duplicative, answer to his requests. Because plaintiff continued to refuse to cooperate during discovery, defendants had to prepare motions to compel, which the Court granted. Further, plaintiff filed multiple motions to which the defendants had to respond. The majority of these motions were groundless, as evidenced by the Court's denial of every single discovery or related motion filed by plaintiff.

Another discovery delay by plaintiff occurred when he unilaterally cancelled the deposition of Mr. Tom Pollock, Montecito's Rule 30(b)(6) witness, at the last minute. Per plaintiff's request, Montecito agreed that Mr. Pollock would be deposed in Atlanta, as opposed to California where he lives and works. Although plaintiff and Montecito agreed and confirmed in writing that the deposition would take place on October 22, 2002, on October 21, 2002, the day before the deposition and an hour before Mr. Pollack was scheduled to board a plane to Atlanta, plaintiff informed Montecito that he did not intend to go forward with the deposition, causing delay and expense for both Mr. Pollock and Montecito.

Additional skepticism of plaintiff's motivation is provided by his refusal—and/or inability—to produce the computer and computer diskettes used in drafting his screenplay. The Court found plaintiff's claim that no electronic versions of the "*Evolution*" material existed "quite improbable." (*Id.* at 12.) These are just a few of the examples causing the Court to believe that plaintiff's motivations during litigation were ignoble. Moreover, even if plaintiff had brought his claim in good faith, which the Court seriously doubts, good faith is not determinative of an award of attorneys' fees. *See Mitek Holdings, Inc.*, 198 F.3d at 842.

### 3. Objective Reasonableness of Positions

The Court first questions the reasonableness of plaintiff's positions because he does not hold valid copyrights on several works which he placed at issue, which is a necessary prerequisite to a copyright infringement lawsuit. Thus, as an initial matter, the only work with copyright protection is the five-page outline of plaintiff's screenplay, which plaintiff did not primarily rely on as the basis for his infringement claim. (Aug. 6, 2003 Order at 42.) Even though plaintiff had a valid copyright for the five-page outline, plaintiff failed to prove copying. First, plaintiff presented no evidence of direct copying. (*Id.* at 36.) Second, he failed to establish copying through circumstantial evidence. Copying can be established circumstantially by showing that the person who composed the defendant's work had access to the copyrighted material and that substantial similarity between the two works exists. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir.1994).

Plaintiff presented no evidence that Montecito had access to his work nor that Montecito had a reasonable opportunity to

view his work. (Aug. 6, 2003 Order at 36.) Further, plaintiff did not mail any of his work, including the five-page outline, to Montecito. Plaintiff could not prove that Montecito copied his work because he "failed to provide one scintilla of evidence that Montecito had access to [his copyrighted] work." (*Id.* at 37).

Plaintiff also failed to prove that either DreamWorks or Columbia had any opportunity to view plaintiff's works. Beyond evidence that his screenplays were mailed to each corporate defendant, plaintiff presented no evidence that any individual involved with the creative development of the motion picture "*Evolution*" had actual access to plaintiff's text. In contrast, defendant Columbia presented unrefuted evidence that it was not involved in the creative development of the movie and maintained plaintiff's script in a separate structure from the creative development branch. (SMF ¶ 34; Defs.' Exs. [56] at App. Tab 72.) DreamWorks also presented the testimony of Mark Haimes, the senior creative executive involved in DreamWorks' creative contributions to the modifications of Jakoby's screenplay in 2000, who stated that he had never heard of plaintiff or his work. (SMF ¶ 33; Defs.' Exs. [56] at App. Tab 32.) Not only did plaintiff fail to prove that defendants copied his work, he also failed to establish that defendants had access to plaintiff's copyrighted material in order to copy it.

Likewise plaintiff failed to show that defendants DreamWorks and Columbia took a significant part in the *creation* of the allegedly infringing storyline. Just as plaintiff admitted that he did not send his works to Montecito, he admitted that he did not send his work to Jakoby, Diamond or Weissman—all of the individuals who developed the allegedly infringing screenplay. Rather, Jakoby created his screenplay in late 1997 and early 1998, circulated his screenplay through his agent to producers and movie studios starting on April 27, 1998. Notably, all of this occurred prior to the May 1998, the development listed in plaintiff's 1999 copyright registration. (Defs.' Br. in Supp. of Summ. J. Mot. [56] at 19–20 & n. 3.) Montecito acquired Jakoby's screenplay on September 10, 1998 and then engaged writers Diamond and Weissman to write a comedy based upon Jakoby's premise. (*Id.* at 20.) DreamWorks was not involved in the creative process until June 2000 and Columbia did not have *any* creative involvement in the movie. (*Id.*) These undisputed facts establish that the movie was created independently by people who did not have access to plaintiff's works.

Although plaintiff asserted that multiple similarities existed between his works and the motion picture "*Evolution*," this Court found that his five-page outline "varie[d] quite significantly in plot, mood, and theme from the motion picture screenplay for '*Evolution.*'" (*Id.* at 42.) Further, "[i]ncidents, characters or settings that are indispensable or standard in the treatment of a given topic are not copyrightable." *Herzog*, 193 F.3d at 1247. (citation omitted). Thus, although some similarities existed between plaintiff's outline and the motion picture, these similarities were "common features in many science fiction stories" and were not a "unique 'expression' entitled to copyright protection." (*Id.* at 44.) Thus, these similarities did not support the inference that the works were substantially similar. (*Id.* at 45.)

In brief, the Court does not believe that plaintiff's positions were objectively reasonable for multiple reasons. First, not only did plaintiff not own protectable copyrights for several of his works, he did not own a valid copyright for the work on which he primarily relied for his infringement claim. Second, Plaintiff presented

no evidence that Montecito had access to his work nor that Montecito had a reasonable opportunity to view his work. Third, just as plaintiff admitted that he did not send his works to Montecito, he admitted that he did not send his work to any individual involved with the creative development of the motion picture *"Evolution."* Fourth, the works that were copyright protected were not substantially similar to the motion picture *"Evolution."*

As is evident, plaintiff repeatedly asserted positions without any evidentiary support, making it impossible for the Court to conclude that plaintiff ever subjectively believed his positions were reasonable. Thus, given the lack of evidentiary support for plaintiff's claims, the Court concludes that plaintiff's legal and factual contentions were not objectively reasonable.

### 4. Need to Advance Considerations of Compensation and Deterrence

The Court recognizes that a prevailing defendant's successful defense against a copyright claim aids in establishing the boundaries of infringement and furthers the purpose of "enriching the general public through access to creative works." *Fogerty,* 510 U.S. at 527, 114 S.Ct. 1023. Thus, defendants have an interest in being compensated for their successful defense of this action. In addition, potential plaintiffs must be deterred from bringing frivolous and baseless suits. Specifically, the Court must deter plaintiffs from alleging copyright infringement when the works at issue are not even copyright protected. After careful consideration of the need to deter and compensate, the Court finds that the circumstances of this case strongly favor an award of attorneys' fees for defendant.

### 5. Final Balancing

Even if plaintiff brought his copyright infringement suit in good faith, good faith is not determinative of the issue of attor-

neys' fees. *See Mitek Holdings, Inc.,* 198 F.3d at 842. "While the [plaintiff's] good faith and the complexity of the legal issues involved would likely justify a *denial* of fees to a successful [defendant], a showing of bad faith or frivolity is not a requirement of a *grant* of fees." *Original Appalachian Artworks, Inc. v. Toy Loft,* 684 F.2d 821, 832 (11th Cir.1982) (emphasis in original). Further, consideration of whether plaintiff can afford to pay the fees is improper; the more proper consideration is whether imposing the fees will further the goals of the Copyright Act. *Mitek Holdings, Inc.,* 198 F.3d at 842–43. The Court concludes that imposing fees on plaintiff would discourage the filing of baseless suits containing frivolous claims and encourage meritorious defenses. Accordingly, the Court **GRANTS** defendants' renewal of their motion for attorneys' fees and expenses.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants Dreamworks, LLC, Columbia Pictures, Inc., and The Montecito Picture Company, LLC's Renewal of Their Motion for Attorneys' Fees and Expenses Pursuant to 17 U.S.C. § 505[108].