Wayne BERRY, Plaintiff,

v.

DEUTSCHE BANK TRUST
CO. AMERICAS et al.,
Defendants.

No. 07 Civ. 7634 (WHP).

United States District Court,
S.D. New York.

April 6, 2009.

Timothy J. Hogan, Esq., Honolulu, HI, for Plaintiff.

Andrew P. DeNatale, Esq., Jonathan E. Moskin, White & Case LLP, New York, NY, F. Wade Ackerman, Esq., Michael Edward Baumann, Esq., Erin N. Brady, Esq., Kirkland & Ellis, LLP, Los Angeles, CA, Raina P.B. Gushiken, Esq., Lyle S. Hosoda, Esq., Lyle S. Hosoda & Associates, LLC, Honolulu, HI, for Defendants Deutsche Bank Trust, Company Americas and JP Morgan Chase Bank.

Robert Penchina, Esq., Levine, Sullivan, Koch & Schulz, LLP, New York, NY, for Defendant General Electric Capital Corporation.

Christopher May Mason, Esq., Nixon Peabody LLP, New York, NY, for Defendant C & S Wholesale Grocers, Inc.

F. Wade Ackerman, Esq., Michael Edward Baumann, Esq., Erin N. Brady, Esq., Richard L. Wynne, Esq., Kirkland & Ellis, LLP, Los Angeles, CA, for Defendants, The Post–Confirmation Trust of the Fleming Cos., Inc. and Robert Kors.

Mr. Wayne Berry, Jupiter, FL, pro se.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

Defendants Deutsche Bank Trust Co. Americas ("Deutsche Bank"), LP. Morgan Chase Bank ("Chase"), General Electric Capital Corporation ("General Electric"), C & S Wholesale Grocers, Inc. ("C & S"), the Post–Confirmation Trust of the Fleming Companies, Inc. ("Fleming Companies Trust") and Robert Kors move to require Plaintiff Wayne Berry ("Berry") to post an appeal bond pursuant to Fed. R.App. P. 7. Several of the Defendants also move for attorneys' fees as prevailing parties on Berry's copyright claims. For the following reasons, Defendants' motion to require Berry to post an appeal bond is granted. Defendants C & S's, Chase's, and Deutsche Bank's motions for attorneys' fees are granted in part and denied in part. General Electric's motion for attorneys' fees is denied.

## BACKGROUND

This litigation transmogrified a copyright infringement action into a Racketeer Influenced and Corrupt Organizations ("RICO") Act lawsuit brimming with allegations of gun-running and money laundering. *See Berry v. Deutsche Bank,* No. 07 Civ. 7634(WHP), 2008 WL 4694968 (S.D.N.Y. Oct. 21, 2008) ("Amended Memorandum and Order"). As the Amended Memorandum and Order noted Berry's "hydra-like three-hundred fourteen paragraph Second Amended Complaint allege[d] a dozen different claims against seven defendants and hundreds of John Doe defendants." *Berry,* 2008 WL 4694968, at *1.

On September 30, 2008, this Court granted Defendants' motions to dismiss. *See Berry*, 2008 WL 4694968. The Clerk entered a Judgment later that day. In mid-October 2008, Defendants moved for attorneys' fees and costs. On October 22, 2008, Berry filed a Notice of Appeal, and that appeal is currently pending before the Second Circuit.

■ On February 20, 2009, Defendants moved in this Court to require Berry to post an appeal bond. Briefing on that motion was completed on March 13, 2009. This Court has jurisdiction to determine these motions. *See Adsani v. Miller*, 139 F.3d 67, 70 (2d Cir.1998) (affirming district court order requiring bond after notice of appeal was filed); *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir.2004) (district court retains jurisdiction to decide collateral matters such as attorneys' fees after a notice of appeal) (collecting cases); *see also Abrams v. Interco, Inc.*, 719 F.2d 23, 27 (2d Cir.1983).

## I. *The Hawaiian Litigation*

As described in the Amended Memorandum and Order, Berry brought two previous copyright actions in federal court in Hawaii (the "Hawaiian Court"). The first, filed in July 2001 against the Fleming Companies, Inc. ("Fleming"), claimed copyright infringement. On March 3, 2003, a jury awarded Berry $98,250 in damages. (Declaration of Timothy Hogan dated Oct. 28, 2008 ("Hogan Decl.") ¶ 1.) Noting that Berry had "limited success on all [his] claims," the Hawaiian Court awarded him $45,586.72 in fees and costs as the prevailing party. (Hogan Decl. ¶ 3; *Berry v. Fleming Cos.*, 243 Fed.Appx. 260 (9th Cir.2007).) After Fleming's unsuccessful appeal, the Ninth Circuit awarded Berry an additional $53,250 in fees and costs. (Hogan Decl. ¶ 5.)

On July 22, 2003, Berry commenced a second action in the Hawaiian Court (the "Second Hawaii Action") alleging copyright infringement, antitrust violations, and RICO claims. (Hogan Decl. ¶ 5.) In total, Berry named twenty-eight defendants, including a number of customers, employees, and partners of Fleming; the Fleming Companies Trust; and C & S. (Declaration of Lex R. Smith dated Jan 25, 2008 ("Smith Decl.") Ex. C: Second Amended Complaint from the Second Hawaii Action dated June 18, 2004.) In an opinion dated June 27, 2005, the Hawaiian Court granted summary judgment for most of the defendants finding that there was no evidence that any of them infringed Berry's copyrights and that the antitrust and RICO claims were without merit. (Smith Decl. Ex. D: Order Granting Summary Judgment dated June 27, 2005.) The remaining defendants—the Fleming Companies Trust and six Fleming employees—proceeded to a jury trial on damages for the remaining copyright claims in 2006. (Hogan Decl. ¶ 5.) At trial, Berry sought $213 million in damages against the Fleming Companies Trust, and $2.7 million against each employee. (Affidavit of Erin Brady dated April 7, 2008 ("Brady Aff. I") Ex. G: Special Master Report dated Dec. 4, 2006 ("Dec. 2006 Report") at 11.) The jury awarded only $57,534 against the Fleming Companies Trust and $2 each against two of the six employees. (Dec. 2006 Report at 6.)

All parties sought fees and costs in the Second Hawaii Action. (Dec. 2006 Report; Brady Aff. I Ex. H: Special Master Report dated Oct. 25, 2006.) In two separate reports, the Special Master recommended an award of fees and costs to the Defendants and costs to Berry. On March 2, 2007, the Hawaiian Court adopted the Special Master's recommendations in part and awarded $84,758.98 to C & S in fees and costs, $59,876.32 in fees and costs to the

Fleming Companies Trust, and $79,164.70 in fees and costs to the remaining defendants. *See Berry v. Hawaii Express Serv., Inc.*, No. 03–00385–SOM–LEK, 2007 WL 689474 (D.Hawai'i Mar. 2, 2007). The Hawaiian Court denied Berry's request for attorneys' fees, but allowed costs amounting to $30,072. (Hogan Decl. ¶ 5.)

The Ninth Circuit affirmed in all respects. *Berry v. Dillon*, 291 Fed.Appx. 792 (9th Cir.2008). The Ninth Circuit awarded attorneys' fees for the appeal in the amount of $38,500 to the Fleming Companies Trust, $16,000 to C & S, and $23,185.13 to another defendant not involved in the current applications. (Bond Brief dated Feb. 20, 2009 Ex. A: Ninth Circuit Fee Orders dated Sept. 29, 2008.) Thus, the total fees awarded against Berry in the Second Hawaii Action amounted to approximately $300,000, while the total of Berry's damage awards and fee awards in both actions was $284,693. (Hogan Decl. ¶ 6.)

II. *Collection Attempts and Berry's Current Financial Situation*

Defendants sought to recover their fee awards from the Second Hawaii Action through various means, including a judgment debtor deposition. *See Berry v. Hawaiian Express Serv., Inc.*, No. 03–00385–SOM–LEK, 2007 WL 2225800 (D. Hawaii July 30, 2007). At the judgment debtor deposition, Berry testified that he was a consultant to a software company. (Affidavit of Erin Brady dated Feb. 26, 2008 ("Brady Aff. II") Ex. H: Deposition of Wayne Berry dated Aug. 13, 2007 ("Berry Dep.") at 70–71.) While the company normally paid him approximately $5,000 per month, Berry acknowledged that in late 2006, the company agreed to pay him a lump sum of $60,000 for an indeterminate period. (Berry Dep. at 71–75.) Berry added that he was not sure when the

company would pay him again. (Berry Dep. at 73–75.) While he produced records showing withdrawals of more than $25,000 from his account in one month, Berry could not recall how he spent the money. (Berry Dep. 60–61.) He also maintained that he had several smaller accounts, and produced no records for one of them because he could not remember the password. (Berry Dep. at 25.)

Berry asserts that he is living on the edge with only $426.16 in his bank account, and several "old" bank accounts each containing less than $100. (Declaration of Wayne Berry dated Mar. 12, 2009 ("Berry Decl.") ¶ 2.) He also claims that he has no other assets aside from his copyrights. (Berry Decl. ¶ 2.)

## DISCUSSION

I. *Attorneys' Fees*

■ A court has discretion to allow recovery of full costs to any party in an action brought under the Copyright Act. *See* 17 U.S.C. § 505; *see also Baker v. Urban Outfitters, Inc.*, 431 F.Supp.2d 351, 356–57 (S.D.N.Y.2006). These costs include "reasonable attorney[s'] fee[s] to the prevailing party." 17 U.S.C. § 505. "This fee-shifting provision is symmetrical: costs and attorney[s'] fees are equally available to prevailing plaintiffs and defendants." *Baker*, 431 F.Supp.2d at 357 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)). However, awards of fees and costs under the Copyright Act are not automatic, *see Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir.1995), but instead are based on a court's "equitable discretion," *Fogerty*, 510 U.S. at 534 n. 19, 114 S.Ct. 1023. Courts consider the following non-exclusive factors: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circum-

stances to advance considerations of compensation and deterrence." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 121 (2d Cir.2001). Of these factors, objective unreasonableness is accorded substantial weight. *See Matthew Bender*, 240 F.3d at 121.

 "The mere fact that a defendant has prevailed ... 'does not necessarily equate with an objectively unreasonable claim.'" *Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05 Civ. 5627(GEL), 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007) (quoting *Ann Howard Designs, L.P. v. S. Frills, Inc.*, 7 F.Supp.2d 388, 390 (S.D.N.Y.1998)). Courts instead must determine "if a copyright claim is clearly without merit or otherwise patently devoid of legal or factual basis ...." *Chivalry Film*, 2007 WL 4190793, at *2.

 In this action, Berry's claims against C & S are based on the same factual allegations raised against C & S in the Second Hawaii Action and determined twice to be meritless; first on summary judgment and again on Berry's request for a permanent injunction. In this case, Berry points to nothing, other than his unsupported assertions, that would suggest that C & S is infringing his copyrights. Berry's claims against the banks were also fatally flawed because he failed to allege any facts showing the control necessary to establish a claim of contributory infringement or the direct financial interest to establish a claim for vicarious infringement. *See Berry*, 2008 WL 4694968, at *5. Finally, Berry's RICO claims cast a wide net over any entity that had contact with Fleming and failed to allege the existence of an enterprise under the statute.

The Hawaiian Court's orders buttress a finding that this action was filed in bad faith. Berry has twice litigated his claims before the Hawaiian Court, seeking hundreds of millions of dollars in damages against dozens of defendants. While he was successful in both lawsuits against Fleming and two of its employees, the amount awarded fell far short of what he sought. Indeed, the prevailing defendants in the Second Hawaii Action received more in fees and costs than Berry received from both of his awards against Fleming. *See Baker*, 431 F.Supp.2d at at 358–59 (finding bad faith where plaintiff sought one-hundred times his actual damages). By filing this third action, and other proceedings against Fleming and any one remotely associated with Fleming, Berry is engaging in the kind of vexatious litigation campaign that evidences bad faith. *See Polsby v. St. Martin's Press*, No. 97 Civ. 690(MBM), 2000 WL 98057, at *3 (S.D.N.Y. Jan. 19, 2000) (finding bad faith where plaintiff had engaged in a "campaign of vexatious litigation" including a meritless lawsuit in another forum based on related facts). In addition, the incredible scope of discovery Berry proposed for this action (over one-hundred witnesses and dozens of third parties with relevant documents) and his claim for over $300 million is so far-fetched that it can only be meant to harass Defendants.

Sanctions have not deterred Berry in the past. He has demonstrated his capacity to pursue costly litigation asserting the same failed claims against an ever growing list of defendants. This is precisely the type of unreasonable conduct Section 505 is intended to discourage. *See Great Am. Fun Corp. v. Hosung N.Y. Trading, Inc.*, No. 96 Civ. 2986(LAK), 1997 WL 129399, at *3 (S.D.N.Y. Mar. 21, 1999) (finding an award of attorneys' fees was appropriate where plaintiff was engaged in bad faith conduct that should be discouraged). Although Berry asserts an inability to pay, that does not prevent this Court from awarding attorneys' fees, but "may be considered in determining the magnitude of

the award." *Chivalry Film,* 2007 WL 4190793, at *4. Accordingly, this Court finds that an award of attorneys' fees is justified under Section 505 of the Copyright Act.

## II. *Amount of Award*

■■■■ Courts have discretion to determine how much to award as attorneys' fees and costs. *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir.1996). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "[A]ny attorney ... who applies for court-ordered compensation in this Circuit ... must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1154 (2d Cir.1983). Attorney fee applications that do not contain such supporting data "should normally be disallowed." *Carey,* 711 F.2d at 1154.

■■■■ A court may not compensate counsel for hours that are "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. "After reviewing counsel's time records, a court 'has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.,* No. 03 Civ. 4148(WHP), 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008) (quoting *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d Cir.1998)). Courts can reduce awards for block billing because "commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities."

*Soler v. G & U, Inc.,* 801 F.Supp. 1056, 1061–62 (S.D.N.Y.1992); *see also Sea Spray Holdings Ltd. v. Pali Fin. Group, Inc.,* 277 F.Supp.2d 323, 326 (S.D.N.Y. 2003) (reducing requested fee by fifteen percent for block billing). In addition, "[a]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998).

■■■■ Deutsche Bank and Chase request $86,665.00 in fees and costs. Their motion to dismiss addressed the copyright infringement and related RICO claims. The claims against C & S went well beyond the copyright infringement theatre and as a consequence its fees and costs escalated to $165,550.93. C & S's fee award should not be twice those of the Bank Defendants. *See United States ex rel. Miller v. Bill Harbert Int'l Const.,* 601 F.Supp.2d 45, 50–51 (D.D.C.2009) ("the Court can also reduce fees 'by a reasonable amount without providing an item-by-item accounting.'") (quoting *Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 973 (D.C.Cir.2004)). This Court can take account of any differences between the claims Defendants faced by adjusting C & S's loadstar to $86,665, the fees sought by Chase and Deutsche Bank in opposing the copyright infringement and related claims.

These Defendants already have outstanding fee awards against Berry, which he has not paid. While Berry claims financial hardship, he does not offer any supporting documentation. Moreover, Berry may have eliminated income through a collusive consulting arrangement and depleted his assets to avoid paying fee awards. These circumstances weigh strongly in favor of a substantial fee award. On the other hand, Defendants could have submitted a consolidated mo-

tion to dismiss, or at least a common set of exhibits, which would have reduced costs. "Culling through the minutiae of ... time records ... would [require this Court to] abdicate the remainder of its judicial responsibilities for an indefinite period." *Miller*, 601 F.Supp.2d at 50–51 (quoting *Cobell v. Norton*, 407 F.Supp.2d 140, 166 (D.D.C.2005)). Thus, using percentage reductions is "a fair and expeditious solution to determining the sum total of reasonable fees and expenses that [Defendants] incurred." *Miller*, 601 F.Supp.2d at 51 (quoting *Cobell*, 407 F.Supp.2d at 166 (citing *Jones v. Clinton*, 57 F.Supp.2d 719, 728 n. 16 (E.D.Ark.1999))). This is especially true in a case like this where the party against whom fees are assessed is unlikely to pay. Weighing these facts, a reduction of twenty-five percent of the requested awards is warranted. This yields a total award of fees and costs of $65,000 for C & S and $65,000 for Deutsche Bank and Chase.

While General Electric asked this Court to award fees, it submitted no documentation. The rule is well-settled that a fee application must be supported by contemporaneous time records or else it can be denied. *See Carey*, 711 F.2d at 1154; *see also Garden City Boxing Club, Inc. v. Puebla's Grocery, Inc.*, No. 06 Civ. 4735(CBA)(RML), 2007 WL 4243219, at *5 (E.D.N.Y. Nov. 29, 2007) (collecting cases denying fees where no documentation is submitted with the request). This Court surmises that General Electric did not comply with this simple requirement because it recognized an exercise in futility when it saw one. The Court is grateful, but nevertheless General Electric's application is denied.

III. *Bond*

 Federal Rule of Appellate Procedure 7 provides that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." The purpose of this rule is to protect the appellee from the risk of nonpayment by the appellant, if the appellee wins the appeal. *See Adsani*, 139 F.3d at 70. The "security for costs may [ ] include attorneys' fees to which a party is entitled, under substantive statutes such as the Copyright Act." *Baker v. Urban Outfitters, Inc.*, No. 01 Civ. 5440(LAP), 2006 WL 3635392, at *2 (S.D.N.Y. Dec. 12, 2006). Courts consider the following factors: "(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *Baker*, 2006 WL 3635392, at *1.

 Berry claims he has no assets and asks this Court to accept his *ipse dixit* that he cannot post any bond. As previously discussed, that assertion is unsubstantiated. Accordingly, Berry's alleged inability to pay does not weight in favor of denial of a bond, though the Court will consider this fact in fixing the amount. Berry admits that he has not paid the prior awards and likely will not pay any fee award obtained by Defendants in this action. Accordingly, there is substantial risk of nonpayment. Berry's appellate brief contains the same failed arguments that were raised before this Court. This is Berry's third copyright action raising essentially the same claims, albeit clothed in a rambling and incoherent pleading.

Considering the foregoing factors, imposition of a bond is necessary to insure that the Defendants will be able to recoup some part of their costs on this appeal. Balancing Berry's status as a *pro se* litigant against the unreasonableness of this litigation and the sizeable unsatisfied prior

awards against him, Berry is ordered to post an appeal bond of $50,000.

IV. *Injunction*

Berry requests that the Court order the return of his intellectual property and enjoin the defendants and their attorneys from any further use, possession, trafficking, or false claims of ownership to his copyrights. Having previously dismissed Berry's claims, his request for an injunction is preposterous and it is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for a bond pending appeal (Docket No. 130) is granted. Plaintiff is directed to post an appeal bond of $50,000 by April 20, 2009. The motions of Deutsche Bank Trust Co. Americas and J.P. Morgan Chase (Docket No. 107), and C & S Wholesale Grocers, Inc. (Docket No. 109) for attorneys' fees are granted in part and denied in part. Deutsche Bank Trust Co. Americas and J.P. Morgan Chase are awarded a total of $65,000 in attorneys' fees and costs. C & S Wholesale Grocers, Inc. is awarded $65,000 in attorneys' fees and costs. General Electric Capital Corporation's motion for attorneys' fees (Docket No. 113) is denied. Plaintiff's request for an injunction is denied.

SO ORDERED.